# Boswell & Woolley *v*. Carlisle, Jones & Co.

*Statutory Trial of Right of Property in Crops seized under Attachment to enforce Lien for Advances.*

1. *What evidence is within issue, on trial of claim suit.*—On a trial of the right of property, between a plaintiff in attachment and a third person as claimant, the latter cannot, ordinarily, controvert the plaintiff's debt against the defendant, nor can the plaintiff prove title in himself to the property levied on; but, where the plaintiff is seeking by attachment to enforce his statutory lien for advances to make a crop (Rev. Code, §§ 1858-60), and the claimant shows title in himself, by mortgage from the defendant, prior to the levy of the attachment, the plaintiff may, in rebuttal, introduce the instrument creating his lien for advances antecedent to the date of the claimant's mortgage.

2. *Sale of property by mortgagee, under legal process, for mortgage debt.*—A mortgagee cannot deprive the mortgagor of his equity of redemption, by selling the mortgaged property under legal process in an action at law founded on the mortgage debt. If the property is land, such a sale would convey no title to the purchaser; and if personal property, it might, perhaps, convey the entire interest in the property, freed from the mortgage.

3. *Statutory lien for advances to make crop; what constitutes, and how far recitals are conclusive.*—To create a statutory lien for advances to make a crop (Rev. Code, §§ 1858-60), it is not only necessary that the prescribed forms should be followed, but the advances must be actually made in good faith, and for the specified purpose; and a stranger to the contract, not being bound by its recitals, may show that they are untrue, and that the instrument was in fact given to secure an antecedent debt.

4. *Same; application of money advanced.*—The statutory lien extends only to the crops of the current year, although the instrument may purport to give a lien for that year and the next ensuing year; and the person making the advances is not required to see to their proper application, nor responsible for any misapplication made without his knowledge or assent.

5. *Same; what title will support claim suit.*—An instrument creating a statutory lien for advances to make a crop does not confer on the person making the advances such title to the crops as will enable him to maintain a statutory action for a trial of the right of property therein; but, if it also contains apt words to make it operative as a mortgage, it will be sufficient.

6. *Evidence unnecessary, but corroborative of witness.*—When the consideration recited in a mortgage is an antecedent debt, and a former mortgage to secure it, which, at the request of the mortgagor, had not been foreclosed; and the mortgagor, testifying as a witness, gives the same account of the transaction; the former mortgage, though unnecessary evidence, would be corroborative of the mortgagor's testimony, if assailed; hence, its admission is not error.

7. *Statute of frauds; promise to answer for debt, &c., of another.*—It is very questionable, whether a charge to the jury is correct, which asserts that a verbal agreement on the part of a person who has a statutory lien for advances, that he will waive his lien in favor of a third person, if the latter will make further advances to the debtor, is void under the statute of frauds (Rev. Code, § 1862), as a promise to answer for the debt, &c., of another.

8. *Charge too favorable to appellant.*—A charge to the jury, which, though erroneous, is too favorable to the appellant, is no ground for a reversal at his instance.

[Boswell & Woolley v. Carlisle, Jones & Co.]

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. M. J. SAFFOLD.

This was a trial of the right of property in seven bales of cotton, twelve bales gathered but not ginned, and twelve hundred bushels of corn, on which an attachment was levied at the suit of Boswell & Woolley against Henry C. Spears, on the 24th September, 1873, and to which a claim was interposed by Carlisle, Jones & Co., and bond given to try the right of property, as provided by the statute. The plaintiffs' affidavit for an attachment alleged that said H. C. Spears was indebted to them in the sum of $5,391.12, for advances made by them under the statute (Rev. Code, §§ 1858-60), to enable him to make a crop during the year 1873; and that he had removed a portion of the crop from the lands on which it was raised, without their consent, and without having paid said advances. On the interposition of the claim, an issue was made up between the parties, under the direction of the court; the plaintiffs in attachment affirming that the cotton and corn levied on "is the property of said Henry C. Spears, and is subject to said attachment," and the claimants denying that it was subject to the attachment. On the trial, as the bill of exceptions shows, after the plaintiffs had read in evidence the attachment, with its levy, and the affidavit on which it was founded, and proved that the property levied on was a part of the crop raised by the said Henry C. Spears during the year 1873, the claimants read in evidence, after proving its execution, a written instrument signed by said Spears, and dated March 3, 1873, in the following words:

"Be it hereby made known that, whereas I, Henry C. Spears, of Dallas county, State of Alabama, did in the year 1872 procure advances in money and plantation supplies from the late firm of Carlisle & Jones, a firm composed of E. K. Carlisle and A. W. Jones, to enable me to grow a crop in said year; to whom I made, executed, and delivered, for the amount of said advances, my two promissory notes, both bearing date 10th January, 1872, and negotiable and payable to their order at the City National Bank of Selma; one on the 15th day of October, 1872, in the sum of $2,183.70, and the other on the 15th day of November, 1872, in the sum of $2,199.50, secured by my mortgage conveying certain real and personal property, recorded," &c. "And the said firm of Carlisle & Jones having been dissolved, and succeeded by the firm of Carlisle, Jones & Co., composed of A. W. Jones and E. K. Carlisle, Jr., to whom my said notes and mortgages have been turned over and transferred, and now belong to them: And having made almost a total failure in raising a cotton crop the past year, in consequence of which I have

[Boswell & Woolley v. Carlisle, Jones & Co.]

been unable to pay off and discharge said notes, or any part thereof: And whereas, at my urgent solicitation, the said Carlisle, Jones & Co. have consented to carry over my said indebtedness, to afford me an opportunity to make a crop the present year; the said notes, together with interest thereon to 1st March, 1873, aggregating $4,487.65; and, at my request, said Carlisle, Jones & Co. have advanced to me the further sum of $2,013.80, evidenced by my other promissory note, dated 1st March, 1873, and negotiable and payable to the order of said Carlisle, Jones & Co. on the 1st day of November, 1873, at the City National Bank of Selma; the amount of said last indebtedness having originated for advances made to me by said Carlisle, Jones & Co. in the necessary provisions, horses, mules, farming implements, and money to purchase the same, and which have been obtained by me from them *bona fide* for the purpose of making a crop of corn, cotton, and other produce, the present year, on my plantation located in Dallas county: I therefore hereby declare, that without such advances it would not be in my power to procure the necessary teams, provisions, and farming utensils to make a crop, and that said advances, or the amount thereof, as well as any further advances that I may hereafter obtain from them, not included in the said promissory note, shall be a lien on all the crops of corn, fodder, cotton, and other produce which may be raised and grown by me on said plantation the present year, and shall also be a lien on the stock furnished, or which may be purchased with the money so advanced. And whereas, also, the said Carlisle, Jones & Co. have made such advances on the present crop, or to enable me to grow a crop this year, on the faith of my pledge to fully secure them in the payment thereof, according to the tenor of my said promissory note; and now, in compliance with my pledge and promise to so secure them, in consideration thereof, as well as in consideration of the money so advanced by them and obtained by me, I do hereby grant, bargain, sell, and convey to the said Carlisle, Jones & Co. the following personal property, that is to say: all the crops of corn, fodder, cotton, and other produce, that may be raised and grown by me, and under my control, on said plantation the present year; to have and to hold, in fee simple, unto the said Carlisle, Jones & Co., their heirs, and assigns, forever. And whereas I have obtained such advances, and obtained the consent of said Carlisle, Jones & Co. to postpone foreclosing my said mortgage to Carlisle & Jones, in consideration that I shall ship, or otherwise convey and deliver to the said Carlisle, Jones & Co., at Selma, Alabama, all the cotton so raised by me, and under

my control, on said plantation the present year, to be delivered in installments, as follows: sixty bales on or before the 1st day of November, 1873, and the residue on or by the 1st day of January, 1874, or as early thereafter as may be practicable with the proper diligence; the said cotton to be by them sold for my account, for the usual rate of two and a half per cent. commissions; and I hereby bind and obligate myself, in the event such shipments of cotton shall not reach or amount to at least one bale, of five hundred pounds average weight, for every twenty dollars of the advances made to me the present year, and the amount due under my notes to Carlisle & Jones as aforesaid, to pay them commissions on the deficit in money, making the prices obtained in actual sales of cotton on my account during the ensuing season the basis in estimating the commissions on such deficit.

"This conveyance is, nevertheless, agreed and understood to be upon the following conditions: that if I, the said Henry C. Spears, shall ship and deliver, as specified above, the quantity of cotton hereinbefore obligated, to said Carlisle, Jones & Co., on or before the dates mentioned for delivery, to be sold by them on my account as before stated, and from the proceeds thereof pay off my said note, and shall cause to be paid off my said two notes payable to Carlisle & Jones, with all interest due thereon, and commissions on any deficit in shipments of cotton, then this conveyance shall be void and inoperative. But, in the event of a failure on my part to fully pay off the amount of my said indebtedness at maturity, then said Carlisle, Jones & Co., their agents, or attorney, are hereby authorized and empowered to take possession of said crops of corn, fodder, cotton, and other produce, and, after giving twenty days' notice of the time, place, and terms of sale, by publication in some newspaper published in Dallas county, may sell on the premises, to the highest bidder, for cash, all of said crops except the cotton, which shall be conveyed and sold by them on the Selma market, in the usual mode practiced by cotton factors in the sale of cotton in said market; and after paying from the net proceeds arising from all such sales the amount of my said promissory note payable to said Carlisle, Jones & Co., the interest that may be due thereon, the cost of foreclosing this mortgage, with any reasonable fee of an attorney, incurred in thus foreclosing, the balance, if any, to be paid to me, my agent, or attorney. And it is hereby agreed, by and between the said Carlisle, Jones & Co. and the said Henry C. Spears, that a foreclosure of the mortgage given by me, the said Spears, to Carlisle & Jones, will be postponed, to await the raising of another crop; but, if not satisfied by the 1st No-

vember, 1873, then I, the said Spears, will interpose no impediments to a foreclosure by the said Carlisle, Jones & Co. In testimony whereof," &c.

"The plaintiffs objected to the introduction of the above instrument as a crop lien, on the ground that a crop lien does not give to the holder such a title to the property in question as would authorize him to come in as a claimant on the trial of the right of property; but the court overruled the objection, and allowed the instrument to be read in evidence to the jury, and remarked to the counsel, at the time, that it was both a crop lien and a mortgage, and that the grantees were thereby invested with such title as would authorize them to adjudicate their claim in a court of law; to which ruling of the court the plaintiffs excepted."

The plaintiffs then read in evidence a written instrument, executed by said Spears and wife, dated the 21st of February, 1872, in the following words: "Know all men by these presents, that whereas Henry C. Spears and Mary Frances Spears, his wife, are justly indebted to William H. Boswell, of Selma, Alabama, in the sum of $2,597.74, as evidenced by their certain note for that much money, made on the 20th day of February, 1872, and payable to the said William H. Boswell, at the Savings Bank of Selma, on the 1st December, 1872, and in the further sum of $2,793.38, as evidenced by their certain other promissory note for the amount of money last aforesaid, made on the 20th February, 1872, and payable to the said William H. Boswell, at the Savings Bank of Selma, on the 1st December, 1873; which said indebtedness is for and on account of advances by the said W. H. Boswell to the said Henry C. and Mary F. Spears, to enable them to make a crop for the years 1872 and 1873, on two plantations cultivated by them in the county and State aforesaid, known respectively as the 'Home place' and the 'Beene place;' and the said advances *was* given in necessary provisions, horses, mules, and farming utensils, and in money to purchase the same, obtained by us from said W. H. Boswell, *bona fide*, for the purpose of making a crop, and without such advances it would not be in our power to procure the necessary teams, provisions, corn, and farming utensils to make a crop; and we also hereby declare, that said advances, or the amount thereof, shall be a lien on our crop grown on the two plantations aforesaid in Dallas county for the years 1872 and 1873, to make which they were procured, and on stock furnished, or which we may buy with the money so advanced, in accordance with sections 1858, 1859, and 1860 of the Revised Code of Alabama. In consideration of said advances, and to further secure the payment of the notes above specified, accord-

ing to the tenor and effect thereof, we do hereby grant, bargain, sell, and convey to the said William H. Boswell the following described personal property, to-wit: on fifty bales of cotton raised on said two plantations during the present year, and on fifty bales of cotton raised in year 1873, and on twenty mules, described in mortgage to Carlisle & Jones; also, two mules, as follows, one black horse mule, and one bay mare mule; also, the following described real estate," &c., describing the said two plantations; "to have and to hold the above described property, real and personal, to the said William H. Boswell and his heirs, forever. And if the said notes are not paid at maturity, the said W. H. Boswell is hereby authorized to take the above described property into his possession, and sell the personal property as he may deem best, and said real estate to the highest bidder for cash, after advertising twenty days' notice of the time of said sale, and apply the proceeds thereof to the payment of said notes, and the charges and expenses incident to the keeping and selling of the property; and the balance, if any, pay over to the said Henry C. Spears and Mary F. Spears, his wife. Upon this condition, nevertheless, if said note is paid at maturity, this conveyance of said last mentioned personal property is to be void, except as to said crop. In further consideration of the premises, we do hereby bind ourselves to ship or deliver fifty bales of cotton raised this year (1872), and fifty bales raised in the year 1873, as specified above, to the said W. H. Boswell, cotton factor, at Selma, Alabama, to be sold by him for the customary commissions of two and a half per cent.; and we further agree to deliver, as above, the first fifty bales of cotton by the 1st December, 1872, and the other fifty bales of cotton by the 1st December, 1873; and in the event the total amount of cotton does not reach one hundred bales for the years 1872 and 1873, of five hundred pounds average weight each, to pay to the said W. H. Boswell commissions on the deficit, at the rate of two dollars and fifty cents per bale. Given under our hands and seals," &c.

This instrument was recorded, on proof by one of the subscribing witnesses, on the day of its date; and on the 22d January, 1873, it was transferred by said W. H. Boswell, for value received, to Boswell & Woolley, the plaintiffs. H. C. Spears, the defendant in the attachment suit, was examined as a witness for the claimants, and testified to the various transactions between himself and both of the parties to the claim suit, and the circumstances under which their respective mortgages were given. He stated that all the recitals in the claimants' mortgage, as to advances, former transactions, etc., were true, but that the debt mentioned in the mortgage

to Boswell "was not contracted for money lent, or for anything obtained by him to make the crop of 1872 or 1873, but was for an old store account contracted by his hands in 1869, or 1870, long before he purchased said plantations, and which he had assumed to pay;" also, that he signed said mortgage without reading it, under the belief that it conveyed only his lands and mules, and in ignorance of its recitals as to the advances and crops, which were not true. The plaintiffs objected to this evidence, but without specifying any ground of objection; the court overruled their objection, and they excepted. Said Spears further testified, that in the latter part of the year 1872, being greatly embarrassed with debts, and having made a very short crop, on which Carlisle & Jones had a statutory lien for advances, he applied for assistance to said W. H. Boswell and B. J. Fort, both of whom were related to him, and held mortgages on his property; that, after consultation, they declined to assist him, but told him to apply to Carlisle, Jones & Co., and said that they would each waive whatever liens they had, in favor of said Carlisle, Jones & Co., or any one else, who would make the necessary advances to enable him to raise a crop during the year 1873; that he immediately called on Carlisle, Jones & Co., informed them of this proposal, and effected an arrangement with them for advances, which was afterwards carried out. B. J. Fort, being examined as a witness for the claimants, testified the same in substance as to the promise of himself and Boswell to waive their liens; while Boswell, being examined as a witness for the plaintiffs, testified that he never agreed to waive his rights under the mortgage of February 21, 1872, in favor of either Carlisle, Jones & Co. or any other person, "except upon conditions that were never complied with." The claimants also offered in evidence the mortgage executed to Carlisle & Jones in 1872, as to which the witness Spears had testified, and the court admitted it, against a general objection on the part of the plaintiffs; to which they reserved an exception.

"This," the bill of exceptions says, "was all the evidence in the case, material to the questions raised;" and the court thereupon charged the jury in writing, of its own motion, as follows: "The plaintiffs' mortgage, or crop lien, of date February 21, 1872, is the first paper in point of time. It gives a lien on the crops of 1872 and 1873, and other property, to secure alleged advances which were to be used in making these crops. It is claimed for this instrument, that it operates as a statutory lien for advances, and also as a mortgage; that if it is not valid as a crop lien, it is valid as a mortgage. To create this statutory lien, the transactions of the parties

[Boswell & Woolley v. Carlisle, Jones & Co.]

must conform strictly to the requirements of the statute. 1. It must be an advance in horses, mules, oxen, or necessary provisions, farming tools and implements, or money to purchase the same. 2. It must be made by the person advancing, and obtained by the person advanced to, to enable the latter to make a crop. 3. It must be declared in a written note or obligation for the advance, given by the person to whom the advance is made, that the advance was obtained by him *bona fide* (in good faith) for the purpose of making a crop, and that without such advance it would not be in his power to procure the necessary teams, provisions, and farming implements to make a crop. 4. The note or obligation must, by the person taking the lien, be caused to be recorded in the office of the judge of probate of the county in which the person to whom the advance is made resides, within sixty days after the making of the same. When these requirements are complied with, and the note or obligation is thus given, the advance so made, or the amount thereof, shall be a lien on the crops raised by means of the advance, and the stock furnished or bought with the money so advanced; and such lien takes precedence of all other liens, except that for the rent of the land on which such crop may be made; but, if not recorded within sixty days, as required, the lien is lost and forfeited. If any of the material requirements of the statute are wanting, the lien is not created by law. Such a lien cannot be created for an old debt, not an advance. The party relying on the statutory lien must show that he has preserved his lien by recording it within the sixty days. *Considered as a mortgage, this instrument is valid, so far as it undertakes to create by contract a lien on the crop of 1872–3, for the debt; and whether it be an antecedent debt, or an advance, as a mortgage it creates a valid lien. But a statutory crop lien, created in 1873, for the making of the crop of 1873, takes precedence of the mortgage lien;* the parties to the mortgage of 1872 being held to have contracted with a knowledge of the law allowing the statutory lien to be created, and in view of it; and hence, a construction giving the crop lien of 1873 precedence does not impair the obligation of the mortgage contract of 1872. *If you find that the consideration of the plaintiffs' mortgage of February 21, 1872, was an antecedent debt, and not an advance, and that the claimants' mortgage, or crop lien, was for an advance of money to raise the crop of 1873, then the claimants' crop lien takes precedence of the plaintiffs' mortgage lien; and if the claimants' crop lien covers the whole property in dispute, then your verdict must be for the claimants.* If you do not believe that the consideration of the Boswell mortgage was an antecedent debt, but was an advance of a sufficient

(37)

amount of money, made in good faith, to enable Spears to make the two crops of 1872 and 1873, and the other requirements of law necessary to create a valid statutory crop lien (?), then, the Boswell crop lien antedating the claimants' crop lien, it must take the crop of 1873, unless it has been waived. If Boswell held both a crop lien and a mortgage on the crop of 1873, and agreed to waive it in favor of the claimants, to the extent of advances necessary to make the crop of 1873, in consideration of his regard for Spears, his kinsman, and to promote his chances of having his debt paid, and his said kinsman protected also ; then, these considerations would support the waiver, unless it involves an agreement which the statute of frauds requires to be in writing. A contract is an agreement between two or more persons to do, or not to do, a particular thing, on sufficient consideration. Here, Boswell, it is said, agreed to waive his lien, in consideration of advances to be made by claimants to his kinsman and debtor. Here, Boswell agrees and contracts to answer for the debt of Spears to the claimants, to the extent of the property on which he had a lien, by withdrawing his lien on the property, and allowing it to go to pay the debt, unless otherwise paid by Spears. This, I think, is the legal effect of the waiver ; and it is void, unless some note or memorandum thereof, expressing the consideration, is in writing, subscribed by Boswell, or by some other person by him thereunto lawfully authorized in writing."

"To each and every part of the aforesaid charge, and particularly to" the italicized portions, the plaintiffs excepted ; and they also excepted to the following charges, which the court gave at the request of the claimants :

"1. If, in the latter part of the fall of 1872, and in the winter of 1872–3, and afterwards during the year 1873, Carlisle, Jones & Co., in good faith, made advances to Henry C. Spears, and said advances were obtained by Spears in money and provisions, or in money alone, to purchase provisions, to enable him to make a crop in the year 1873, on his premises in this county ; and if said advances amounted, on the 3d day of March, 1873, to $2,000, or thereabouts ; and if said Spears, in the month of March, 1873, executed to them the mortgage in evidence, for the purpose of securing the payment of said advances ; and if said Spears made the crop in said mortgage mentioned by means of said advances ; and if the cotton and corn in controversy in this suit is a part or all of said crop,—then the jury should find a verdict for the said Carlisle, Jones & Co., no matter whether Boswell had waived his alleged mortgage lien or not ; for the mortgage lien of Carlisle, Jones & Co. would be prior to, and better than his,

if the debt mentioned in his mortgage was not created for the purpose of enabling Speais to make the crop of 1873.

"2. The recitals in Boswell's mortgage, that the debt therein mentioned was created for the purpose of enabling Spears to make a crop in 1873, if the complainants have a good and valid crop lien, are not evidence of the truth of that statement, on this trial : it must be proved by other evidence, to the satisfaction of the jury, and the proof thereof is upon the plaintiffs."

The several rulings of the court on the evidence, and the charges to the jury, to which exceptions were reserved by the plaintiffs, are now assigned as error.

MORGAN, LAPSLEY & NELSON, for appellants.—1. On the trial of a claim suit, the only question to be litigated is, whether or not the property belongs to the claimant, as against the attaching creditor; and the attachment being produced, the validity or invalidity of the plaintiff's debt is outside of the issue.—*Pulliam et al. v. Newberry's Adm'r*, 41 Ala. 168; *Taliaferro v. Lane*, 23 Ala. 369; *Butler v. O'Brien*, 5 Ala. 316; *Harrell v. Floyd*, 3 Ala. 16; *Huff v. Cox*, 2 Ala. 310; *Stone v. Stone*, 1 Ala. 582; *Hardy v. Gascoigne*, 6 Porter, 447; *Franklin v. Elliot*, 5 Porter, 182; *Collingsworth v. Horn*, 4 S. & P. 237; *Carleton v. King*, 1 S. & P. 472. Consequently, the court erred in allowing Spears to testify that the plaintiffs' mortgage was not given for advances.

2. This evidence was improperly admitted, for the further reason, that it allowed the grantor to contradict the recitals of his own deed, and prove a consideration different from that expressed in the deed itself; which can never be done at law.—*Moody v. McCown*, 39 Ala. 586; *Carter v. Beck*, 40 Ala. 599.

3. The court erred in its construction of the statute giving a crop lien for advances, in several important particulars. There is nothing in the statute which restricts the lien to the crop raised during the year the advance is made. The lien is given on the crops raised by means of the advances, whether raised in one year or several.—*Jones v. Webster*, 48 Ala. 109. The singular includes the plural, and the plural includes the singular.—Rev. Code, § 1. Nor is it necessary, as the charge of the court asserts, that the crop should be raised with the means advanced; for this would always enable a dishonest debtor, obtaining an advance made in good faith, to defraud his creditor.

4. A statutory lien for advances does not confer on the holder any title to the crops, and he cannot interpose a claim under the statute. He has a mere lien, like that of a land-

[Boswell & Woolley v. Carlisle, Jones & Co.]

lord, but no right of property, or of possession.—*Thompson
v. Spinks*, 12 Ala. 154; *Dulany v. Dickinson*, 12 Ala. 603. To
maintain this statutory action, the claimant must have a
legal title.—*King & Co. v. Hill*, 20 Ala. 133; *Jones v. Rey-
nolds*, 28 Ala. 305. By statute (Rev. Code, § 3024), a mort-
gagee may interpose a claim before the law day; as he might
do before that statute, after the law day.—*Floyd v. Morrow*,
26 Ala. 357.

5. The instrument under which the claimants deduce title,
although it contains apt words for a mortgage, cannot take
precedence of the plaintiffs' prior mortgage; and if the
plaintiffs' prior mortgage is valid, it conveyed the legal title
to the crops, and left nothing on which the claimants' junior
mortgage could operate.—*Jones v. Webster*, 48 Ala. 109.

6. The property in controversy was the crop of 1873. The
claimants' mortgage on the crop of 1872 was irrelevant to
that issue; and being older than the plaintiffs' mortgage, it
might mislead the jury. Its admission was erroneous, and,
*prima facie*, injurious.—*Frierson v. Frierson*, 21 Ala. 549;
*Bilberry v. Mobley*, 21 Ala. 277; *Thomas v. De Graffenreid*, 27
Ala. 651.

BROOKS, HARALSON & ROY, *contra*.—1. The claimants had
not only a valid statutory lien on the crops of 1873, but the
same instrument was also operative as a mortgage.— *Gafford
v. Stearns*, 51 Ala. 434, and authorities there cited. As mort-
gagees, they had such a title as would sustain detinue or
trover.—1 Chitty's Pl. 121; *Jones v. Webster*, 48 Ala. 109. As
mortgagees, the statute gives them the right to interpose a
claim.—Rev. Code, § 3024.

2. The claimants were not bound by the recitals in the
plaintiffs' mortgage, and had a right to show that they were
untrue in fact.

3. The mortgage to Carlisle & Jones, though not relating
to the crop of 1873, was clearly relevant evidence. It tended
to corroborate the testimony of Spears, and was referred to
in the mortgage to the claimants.

4. The plaintiffs sued out their attachment to enforce a
statutory lien for advances, and they cannot be allowed to
show title in themselves under a mortgage. They are con-
fined to the issue which they have made, and can only show
title in the defendant.

5. The charge of the court, as to the constituents of a
valid statutory lien for advances, is sustained by *Gafford v.
Stearns*, 51 Ala. 434; *Frazier v. Blair*, at January term, 1873.

6. The plaintiffs, being only assignees of the mortgage or
lien given to Boswell, cannot enforce that lien by attach-

ment.—*Foster v. Westmoreland & Trousdale*, 52 Ala. 223. If the attachment was improperly sued out, the plaintiffs were not entitled to recover.—*Taliaferro v. Lane*, 23 Ala. 376; *Braley v. Clarke*, 22 Ala. 361.

7. If there is error in any of the rulings of the court, the plaintiffs were not thereby injured.

MANNING, J.—Appellants, as plaintiffs, in the autumn of 1873, sued out a writ of attachment against Henry C. Spears, defendant, under sections 1858, 1859, and 1860, of the Revised Code, to enforce a crop lien claimed by them, upon cotton and corn raised by him that year in Dallas county; the affidavit on their behalf alleging, that the amount for which they sued was advanced under those sections of the Code to enable Spears to make his crops of that year, and that he had removed a portion of these from the premises, without their consent, and without having paid such advances. Under this writ, the sheriff seized cotton in bales, cotton gathered but unginned, and corn, of the crops raised by Spears that year; to which property the appellees made claim; and the statutory contest—a trial of the right of property—was thereupon afterwards instituted. The issue was formed, according to law, by an allegation on behalf of plaintiffs that the property levied on belonged to defendant Spears, and was subject to the levy of the attachment, and by a denial on the parts of claimants that it was subject to the attachment.

On the trial of such an issue, the claimant is not, ordinarily, permitted to controvert the indebtedness of defendant to the plaintiff. The inquiry is not presented, whether the relation of debtor and creditor exists between them.—*Pulliam v. Newberry's Ex'r*, 41 Ala. 168, and cases there cited. The issue relates to the rights of the parties in the property attached; and a *prima facie* case being made for plaintiff, it requires, and of course permits the claimants, to show that they have such a title to or interest in the property, as prevents it from being subject to be sold to pay the defendant's debt to plaintiffs. Without showing this, they cannot have any legal right to raise questions that pertain to a controversy between other persons. And, on the other hand, the issue joined does not allow the introduction, on behalf of plaintiffs, of evidence that the title was, by mortgage or otherwise, in them. Such a title cannot be set up or vindicated by a proceeding which implies, and under an issue in which they affirm, that the title is in defendant Spears; by reason whereof, they attach the property to pay a debt he owes.

The attachment of a debtor's property subjects it, by operation of law, to a lien upon it in favor of the attaching creditor, from the time the writ is executed by a levy; and generally, this is the date at which the lien has its origin in an attachment cause. But section 1860 of the Revised Code gives to a creditor, having a crop lien, the right "*to enforce* such lien," under certain circumstances, by a writ of attachment; and it is under this section that the plaintiffs brought their suit against defendant Spears. The object was to *enforce* such a lien. Hence, if in the trial of the issue formed between plaintiffs and the claimants of the property attached, the latter show a title in themselves, antecedent to the levy of the writ of attachment, and therefore older than the lien created by the levy, the plaintiffs may show that, by a transaction *in pais* between them and the defendant, they acquired a crop lien on the same property before title was acquired by the claimants, which crop lien they are proceeding according to law to enforce. Consequently, if the instrument made by Spears and wife, in February, 1872, purporting to declare a crop lien on the crops of 1872 and 1873, as well as to be a mortgage in favor of Boswell, who assigned it to plaintiffs, be valid and operative to create a crop lien simply, it was properly introduced to prove such lien, and to maintain the validity of the attachment, in opposition to the right of claimants to the same property under the subsequent instrument of March, 1873, executed by Spears to them. But, if the former instrument to plaintiffs did not create the statutory crop lien in their favor, on the crop of 1873, but was effectual as a mortgage only, although as such it conveyed the title to that crop to them, it could not, on the trial in this cause, be introduced to sustain their title as mortgagees; because, as we have said, that is not only not within the issue joined, but is contrary to the averment in their own pleading.

2. Besides, in such a case, the legal title being in the mortgagees, only the equity of redemption would remain to Spears; and of this, it is not permitted that he shall be foreclosed through an action brought by the mortgagee, in a court of law, upon the mortgage debt, and a sale of the equity of redemption to satisfy the judgment in such action. In respect to real estate, at least, such a sale of the equity of redemption would convey no title to the purchaser.—*Powell v. Williams*, 14 Ala. 496. But a mortgagee of personal property, who should himself cause it to be sold, to satisfy a judgment at law in his favor for the mortgage debt, might be held, perhaps, as thereby relinquishing his title as mortgagee, and causing the entire property to be sold without the incumbrance.—See *Barker v. Bell*, 37 Ala. 358–360. And a like

sale under a writ of attachment, in a suit at law, of the mortgagee, would, we apprehend, not differ in its effect from a sale under execution in such a case.

3. But the question comes up, did plaintiffs have a crop lien on Spears' crops of 1873? If they had, it was created by his and his wife's deed of February, 1872, to Boswell. Care was taken to have every thing which the statute prescribes, as necessary in an instrument establishing such an interest, amply expressed in that deed. There is no defect of form. But form and formalities are not sufficient to create a crop lien. Such a charge, when it exists, supersedes any other lien, whether created by mortgage or otherwise, on the crops upon which it is fastened, except the landlord's lien for the rent of the land on which they were grown; and a lien to which is conceded this precedence of and priority over other and older liens, must not only be authenticated as the law prescribes, but must be founded on a real, true, and honest transaction of the kind described in the statute. Indeed, the better to insure this, the law puts the parties, as it were, upon their honor. The "advances in horses, mules, oxen, or necessary provisions, farming tools and implements, or money to purchase the same," are to be made to the person obtaining them, "to enable him to make a crop;" and for any such advance he must declare, "in a written note or obligation, * * that the same was obtained by him *bona fide* for the purpose of making a crop, and that without such advance it would not be in [his] power * * to procure the necessary team, provisions, and farming implements to make a crop." And this declaration is to be spread upon the public records. All the provisions of the act show, that the parties to the transaction are expected to be scrupulously upright and sincere. If they are not so—if it be shown that no such advances were really made for the purpose of enabling a crop to be raised, and that the declarations to that effect were falsely made, or procured to be made, as a device for creating a security that should override older securities of other creditors, the law denounces the securities so obtained as fraudulent and void in respect to such creditors. The Circuit Court, therefore, did not err in refusing to exclude testimony tending to show that the instrument relied on by plaintiffs was made to secure the payment of a pre-existing debt of Mr. Spears, and not for advances to make a crop, as alleged; which allegations he did not know to be contained in the instrument. The claimants, not being parties to this instrument, are not bound by the recitals in it.

4. But, though this evidence was not illegal, it was not in the present case necessary. The deed in question was made

in February, 1872; and though it purports to create a crop
lien on the crops of that year, and also on crops of the next
year, 1873, it could not so operate in respect to the crops of
the latter year. It is too obvious to admit of argument, that
the advances provided for by the statute were such as should
be used in making the next ensuing crops. The circuit
judge did not err in so instructing the jury. His charge to
them, in respect to what is requisite to constitute a valid
crop lien, is a correct and very lucid statement of the law;
except so far as it seems to make the crop lien depend upon
the actual application of the advances to the making of the
crop. The creditor is not responsible for a misapplication
of them, made without his knowledge or assent. It is quite
clear from the instrument itself, on which plaintiffs based
their claim of a crop lien, that they have no such lien on the
crop of 1873.

5. The claimants derive their right to the crops attached,
from the instrument defendant Spears executed to them in
March, 1873. It declares a crop lien thereon, to secure
advances made to enable him to raise a crop that year; and
the uncontradicted oral testimony is in harmony with its
recitals. But a crop lien only is not sufficient. In a "trial
of the right of property," the claimants must have something
more than a mere lien. They must have a title—at least, the
right to the possession of the thing in controversy, and not
the mere right to have it sold by the officers of the law to
pay a debt due to them. But the instrument of March, 1873,
vests title to the crops to be grown by Mr. Spears in that
year, in them. Although it contains apt words to constitute
a crop lien, like the similar instrument considered in *Gafford
v. Stearns* (51 Ala. 434), it is a mortgage also; and as such,
it conveys a title to the claimants, which would have enabled
them to maintain *detinue*, and is consequently sufficient to
give them a standing in a case of the trial of the right of
property. As this instrument was the regular and proper
evidence of the title to claimants, the Circuit Court did not
err in allowing it to be read as such to the jury.

6. In his testimony, received without objection, concerning
the transaction in which this instrument was given, Mr.
Spears explained that, being indebted to the claimants, in
January, 1872, he had in that month executed to them a
mortgage for their security, which they did not foreclose, but
permitted to stand over. The same thing is mentioned in
the instrument to them of March, 1873; and the mortgage
referred to was introduced in evidence at the trial, against a
general objection of plaintiffs thereto. Such evidence may
not have been necessary. But, as it could not be known

whether plaintiffs would not, in conclusion, seek to discredit the account of the transaction given by the witness, the mortgage was admissible in support of his testimony, concerning the matters to which it had relation. It could not in any way produce injury to plaintiffs.

7. Among the charges given by the court, is one based upon evidence that Boswell had agreed to waive his lien in favor of claimants, if they would advance io Spears, their common debtor, the means of making a crop, and that they did so. The circuit judge instructed the jury, that this agreement, not being reduced to writing, according to the statute of frauds, was void, as an undertaking in effect to pay, to the extent of the property on which the lien was waived, the debt of another. It is very questionable whether this charge was correct; but, as it was given in favor of appellants, if there was error in it, it was error of which they can not complain.

8. It remains to consider the objections to the first charge given by the circuit judge, at the instance of claimants in the court below. As we have before explained, the *plaintiffs* could not extend backward the lien in their favor, created by the attachment of the property in controversy, except by connecting it with an antecedent crop lien, which the attachment was designed to enforce : and the only instrument on which they relied to do this, was the deed to Boswell, made in February, 1872, which, as we have seen, did not create such a lien on the crop of 1873. And on the other hand, a simple crop lien on that crop, in favor of *claimants*, would not be sufficient to enable them to maintain their side of the issue in the action of "trial of the right of property." They must show in themselves a title, or right of possession ; for which they relied on the instrument, that was in fact a mortgage, of March, 1873. The question of a crop lien was thus, in fact, wholly excluded from the case made by the evidence. Yet, almost all of the instructions of the Circuit Court, given voluntarily or on request, seem founded on the idea that this was the real question in the cause, on both sides ; and some excellent charges were given to the jury in that aspect of the case. But, as plaintiffs had no crop lien whatever, and the claimants were not required to prove one in their favor, but might rely on their mortgage only, the instructions of the court tended to confuse the jury in respect to the rights of the claimants, by seeming to require of them the duty of proving more than, as mortgagees, they were bound to prove. They were not, for instance, required as such to prove that the advances they made, for which the instrument of March, 1873, was executed, were made to enable Spears to raise a

crop; or that they were used for that purpose. It was sufficient to show that the advances were in fact made in good faith, and that Spears became indebted to them therefor. The charges, including the first one given at the instance of the defendants, required this, and more; and if there was any error in them, it was error to the prejudice of the claimants, of which the plaintiffs, who are the appellants in this court, can not complain.

Let the judgment of the Circuit Court be affirmed.