# Rodenberg v. H. B. Claflin Co.

*Statutory Trial of Right of Property.*

1. *Claim suit; admissibility of deposition in attachment suit in evi-
dence.*—Upon the statutory trial of the right to property, which is
instituted by the interposition of a claim to property levied upon
under a writ of attachment, depositions of witnesses taken in the at-
tachment suit, are, under agreement of counsel, admissible in
evidence.

2. *Fraudulent conveyance; when more goods delivered than mentioned
in bill of sale.*—In a statutory claim suit, where the attaching creditor
attacks as fraudulent the sale of the attached property by the de-
fendant debtor to the claimant, if it is shown that after the execu-
tion of the bill of sale there were delivered to the claimant more
goods than were mentioned in the bill of sale, and the claimant knew
that fact, or afterwards ratified the delivery of such goods by dis-
posing of them as his own, the transaction was a fraud upon the
creditors of the defendant in attachment, which vitiated the entire
transaction; and the fact that all of the goods, including those added,
were not of value to pay, or more than pay, claimant's indebtedness
against defendant, can not validate the sale.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. JOHN MOORE.

This was a statutory claim suit, instituted by the ap-
pellant, Charles L. Rodenberg, interposing a claim to
certain goods, which had been levied upon as the prop-
erty of F. S. & H. Rosenberg, under an attachment issued
at the instance of H. B. Claflin Co., in a suit in which
H. B. Claflin Co. was plaintiff, and F. S. & H. Rosen-
berg were defendants.

Upon the trial of the cause, as shown by the bill of
exceptions, the plaintiff offered in evidence the deposi-
tions of Andrew H. Lipsett and John C. Wood, taken in
the case of the H. B. Claflin Company v. F. S. & H.
Rosenberg. The claimant objected to the introduction
and reading of the depositions in evidence on the

grounds that they were not taken in this case, and the claimant in this case was not a party to the suit in which they were taken. The plaintiff thereupon, introduced J. F. Milhous, who testified in substance as follows: "I am the clerk in this court, and have been since 1886. I have made search in my office for an agreement between the attorneys for the plaintiff and the claimant as to these depositions, and no agreement is in my office. I was present at the time this case was before tried, and heard then the same objection raised by claimant to the introduction of these depositions, that is now raised; and saw one of the attorneys for the plaintiff produce a paper in writing, and show it to the attorneys for the claimant; that the attorneys thereupon withdrew their objection and consented for the depositions to be read in evidence. The attorneys for the plaintiff then stated to the court, in the presence of the attorneys for the claimant, that the paper he then had was an agreement in writing, signed by the attorneys for the claimant and plaintiff, consenting to the introduction in evidence in this case of these depositions."

P. H. Pitts, Esq., was then introduced by the plaintiff, who testified in substance as follows: "I have made diligent search in the office of Dawson & Pitts for an agreement signed by the attorneys for claimant and plaintiff, consenting to the introduction in evidence of these depositions, and can't find such paper. Said paper is lost. I prepared an agreement consenting that these depositions might be read in evidence in this case. This agreement was signed by attorneys for claimant and plaintiff. I produced this agreement in court, when this case was first tried, and showed it to the attorneys for the claimant, and they then withdrew the objection then made to the introduction of these depositions. I don't know what has become of said agreement."

The claimant then introduced John W. Bush, Esq., who testified in substance as follows: "I never made any agreement consenting for those depositions to be used in the trial of this case, and I don't remember about Mr. Pitts producing such an agreement when this case was before tried." The claimant then introduced Geo. H. Craig, Esq., who testified in substance as follows: "I don't remember signing such an agreement, and I don't remember such an agreement being pro-

duced in court when this case was before tried." The court overruled the claimant's objection to the reading of such depositions in evidence, and the claimant duly excepted to this ruling of the court. The facts relating to the only other question which is discussed by the court are sufficiently stated in the opinion.

There was judgment for the plaintiff, condemning the property levied upon under the attachment to the satisfaction of the judgment rendered in favor of the plaintiff against the defendants, F. S. & H. Rosenberg. Claimant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

SATTERFIELD & YOUNG, GEORGE H. CRAIG and BUSH & BROWN, for appellant.—If it was a fact that the vendors put the napkins in with the other goods without the knowledge of Rodenberg, after the agreement was delivered to him, it could not taint the original contract between F. S. & H. Rosenberg and said Rodenberg with fraud. It could only be regarded as a circumstance bearing upon the *bona fides* of the transaction taken in connection with other circumstances, if any, that were proved, and, therefore, a matter for the jury to pass upon.—*Chipman v. Stern*, 89 Ala. 212; *First Nat. Bank v. Smith*, 93 Ala. 100; *Buford v. Shannon*, 95 Ala. 205.

PITTS & PITTS, *contra.*—1. The court did not err in overruling the claimant's objection to read in evidence the depositions.—*Mayer v. Clark*, 40 Ala. 259; *Pulliam v. Newberry*, 41 Ala. 168; *Dryer v. Abercrombie*, 57 Ala. 497; *Sheldon v. Carter*, 90 Ala. 382; *Foster v. Goodwin*, 82 Ala. 384; *Wollner v. Lehman*, 85 Ala. 274.

2. The general affirmative charge in favor of the plaintiff was properly given.—*Claflin Co. v. Rodenberg*, 101 Ala. 213.

HARALSON, J.—1. The appellant, claimant below, assigns 22 errors in the rulings of the lower court on the trial of this cause, and for reasons apparently very good, insists on only two of them—the 1st and 20th; the 1st, for the overruling of claimant's objection to the reading in evidence of the depositions of two witnesses living in New York, taken to prove the account sued on against

[Rodenberg v. H. B. Claflin Co.]

the defendants; and the 20th, for the giving of the general charge for the plaintiff.

As between the plaintiff in attachment and a claimant of the property levied on, under a purchase by him from the defendant in attachment, the attachment itself is sufficent proof of the plaintiff's debt against the defendant. The enquiry is not presented on the trial of such an issue, whether the relation of debtor and creditor exists between them, but it relates to the rights of the parties in the property attached. The introduction of the attachment gave the plaintiff its right to a verdict, unless the claimant showed that he had such title to and interest in the property as relieved it from liability to pay defendant's debt to plaintiff.—*Pulliam v. Newberry*, 41 Ala. 169; *Boswell & Woolley v. Carlisle, Jones & Co.*, 55 Ala. 554; *Foster v. Goodwin*, 82 Ala. 385; *Wollner v. Lehman*, 85 Ala. 280. If there had been any necessity to introduce the depositions, taken in the case of appellee against the defendants in attachment, to prove its debt against them, they were clearly admissible, under an agreement which was satisfactorily established, made between counsel, that they might be introduced and read in this case.

2. The claimant, for the purpose of showing title to the goods levied on, introduced and read a bill of sale to him from the defendants in attachment, executed the day of and a short time before the levy of the attachment by the sheriff. This bill of sale had an itemized statement of the goods which were sold to the claimant by defendants, in the the shape of three separate accounts, one footing up $1,603.45, another $605.62, and the last one, $235.90, amounting, all together, to $2,444.97, which constituted the full consideration for which claimant acknowledged the payment and satisfaction of the indebtedness of $1,500, mentioned in the bill of sale.

An issue was made up under the direction of the court to try the right of the property levied on under the attachment and claimed by the claimant, the plaintiff alleging, that the property claimed by the claimant, was at the time of the levy, the property of the defendants in attachment, subject to be levied on as their property to satisfy the debt due the plaintiff, upon which allegation the claimant took issue. The real question tried

was as to the *bona fides* of the sale of the defendants in attachment to the claimant; the contention of plaintiff being that it was fraudulent and void as to the defenants' creditors, having been made to hinder, delay and defraud them.

3. On the former, as on this, trial, the evidence tended to show, that the goods which claimant claimed to have purchased from defendants, were in several boxes and a trunk, and that there were goods in the boxes and trunk delivered over to claimant, which were not mentioned in the bill of sale executed by defendants to claimant, at the date of the purchase. On review of the case on appeal in this court from the former trial, we held that the bill of sale had its well defined legal effect, which could not be altered or varied by any other agreement, express or implied, and that was, that defendants had sold to claimant the goods mentioned in it, and no others, for the payment of the entire debt owing by him to them, so that, the moment the bill of sale was executed and delivered, that indebtedness was discharged, and the contract of sale, as to the other creditors of defendants, became irrevocable and unalterable. And we, therefore, further held, that defendants could not, thereafter, deliver other goods to the claimant in payment of that indebtedness, and if they did add to the goods mentioned in the bill of sale other goods of material value, as and for the payment of said indebtedness, and the claimant knew that fact, or afterwards ratified the unlawful delivery of such goods by disposing of them as his own, the transaction was a fraud upon the other creditors, which authorized them to set aside the sale as to all the goods.—*Claflin Co. v. Rodenberg*, 101 Ala. 213.

It is contended by appellees, that after said sale was consummated, other goods of material value, consisting of a lot of table napkins varying in value, as the proof tends to show, from $40 to $200, were added to those already sold to claimant, and that he unlawfully took and sold them for his own benefit. If this was true, under our former ruling, the court below committed no error in giving, but properly gave, the the general charge for plaintiff. Let us see about this. In the first place, the bill of sale does not include napkins, designated as such, but does include table linen. The sched-

[Rodenberg v. H. B. Claflin Co.]

ule attached to the affidavit of claim, does not describe table napkins, and the claim bond does not cover any such designated property. The schedule does, however, describe table linen. Whether table linen included napkins as separate and distinct articles of merchandise in this transaction, was a question of proof. The evidence on this point makes a difference between the two. When claimant sold the goods he claims to have purchased to Obendorff & Ullman, both linen and napkins were separately specified in the account sale by him to them. And still further, it appears that claimant, after he had made his purchase, invoiced the goods, for his own purposes, and in this invoice—Exhibit X—he itemized both linen and napkins. In the schedule to the bill of sale, we find a number of articles of merchandise, itemized as linen, with prices attached—some seventeen in number. The same articles appear in Exhibit A to the affidavit of claim. In neither, do any articles of merchandise, denominated napkins, or table napkins, appear. In Exhibit X, which is an inventory made out by the claimant, or under his direction, after the sale to him, and for his own use and purposes, he includes the identical items of linens—seventeen in number—which we find included in the schedule of goods attached to the bill of sale, and also in Exhibit A to the claim affidavit, and in addition thereto, 73 dozen napkins, in nine separate items, not included, as stated, in the bill of sale. The proof also shows that the claimant sold a lot of napkins to Obendorff & Ullman; and that he got them from defendants in attachment is not denied.

Here then we have proof to show, without conflict, that no napkins were included in the bill of sale of the goods—an itemized list of which was attached to the same—as to the contents of which, we must presume claimant was not ignorant; that a lot of napkins was added afterwards to the goods sold, and that claimant received and sold them on his own account. His receipt and appropriation of these goods towards the payment of his indebtedness was a fraud upon the creditors of defendants in attachment, which vitiated the entire transaction.

4. The fact, if it be true as suggested by counsel, that all the goods, including those added, were not of value to pay, or more than pay, claimant's debt against defendants, can not be held to legalize the fraud.

[Francis-Chenoweth Hardware Co. v. Bailey & McConnell.]

There was no error in giving the general charge for the plaintiff.

Affirmed.