## HARRISON & ROBINSON vs. JOHNSTON.

[ACTION ON PROMISSORY NOTE—APPLICATION OF PAYMENTS.]

1. *Application by law of payment on running account.*—When there is a running account between debtor and creditor, a general payment, in the absence of any application by the parties, and where the character of the dealings or other circumstances do not show a different intention, will be applied by law to the charges in the order of time in which they accrued, without reference to the fact that one item may be better secured than another; since the particular parts, being blended together in one common account, have no longer any separate existence, and the balance only is considered as due.

2. *This rule applied against debtor's surety.*—The foregoing rule applies in this case, where the defendant became surety for the debtor on a note given to his commission merchant, with whom he had a running account for advances made, cotton sold, &c., on which the note was credited when received, and debited when due; an account current being rendered to the debtor after the maturity of the note, showing a balance against him larger than the amount of the note, and the subsequent payments being credited on general account.

3. *Payment referred to existing debt.*—In the absence of evidence showing most unmistakably the intention of the parties, a general payment to a commission merchant, with whom the debtor has a running account, will be referred to his existing indebtedness, and not to future advances.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. EDMUND W. PETTUS.

THIS action was brought by the appellants, as partners, to recover the amount of two promissory notes, executed by Nathaniel G. Friend and John C. Johnston; each for $2,500, dated April 4, 1852, and payable respectively nine and ten months after date, to Harrison & Robinson, or order, at the Bank of Mobile. The defendant (Johnston, who alone was sued) pleaded, " 1st, that there was no good and sufficient consideration for said note to make it binding on him; and, 2d, that said note was paid by N. G. Friend, his principal."

The defendant filed interrogatories to the plaintiffs, and read their answers in evidence on the trial; and read in evidence, also, the deposition of one J. F. Louden, who was plaintiffs' bookkeeper, from October, 1852, until November, 1853. The plaintiffs read in evidence another deposition of said Louden, taken in their behalf, and the deposition of one Wm. K. Thurber. The material facts of the case, as proved by these witnesses, may be thus stated:

The plaintiffs were the factors and commission merchants of said N. G. Friend in 1850, and from that time until his death, which occurred after July, 1853, and kept a running account with him; but they had no business transactions with said Johnston, except in receiving notes from said Friend which were signed by Johnston as surety. On the 10th June, 1851, they received a note from said Friend, with Johnston's name signed as co-maker, for $5,000, due March 1, 1852; which note was credited on Friend's account when received, and charged against him when due, but was not given up to

him until December 23, 1852. The notes here sued on were received from Friend on the 29th April, 1852, and were passed to his credit on the plaintiffs' books as cash, less the interest; being held as bills receivable, and charged against him at maturity. The witness Louden testifies, that "the reason why the notes are credited as well as charged, is to enable them to draw that much money—it operates as an advance of that much, being but a fictitious credit"; while Thurber says, "the effect of this was to give Friend a *bona fide* credit to that extent." If the account had been stated at the time these notes were received, and a balance then struck, Friend would have been found indebted to plaintiffs in the sum of $394 99; and on the 16th January, 1853, the balance against him, not including the notes, would have been $1,560 91. An account was stated and rendered to Friend on the 2d April, 1853, in which the notes were credited and debited as above stated, and which showed a balance against him at that time of $5,750 23. This balance was carried forward, constituting the first item of a new account, which was thus continued:

"Doct. N. G. Friend in account with Harrison & Robinson.

| 1853. | Dr. | | |
|---|---|---|---|
| Apl. 2. | To balance, as pr. account rendered, due us in cash. | $5750 | 23 |
| " 8. | " invoice goods, pr. Ambassador, | 36 | 03 |
| " 26. | " acceptance yr. dft. favr. J. G. Friend, due May 21–24, '54, | 1075 | 00 |
| " " | " commissions accepting do. | 26 | 88 |
| June 11. | " acceptance yr. dft. favr. self, due March 1–4, '54, | 1200 | 00 |
| " " | " commissions accepting do. | 30 | 00 |
| July 22. | " acceptance dft. favr. J. G. Friend, due Jan. 1–4, '54, | 2500 | 00 |
| " " | " commissions accepting do. | 62 | 00 |

On the 6th June, 1853, Friend made a payment of $2,882 67, and on the 9th of the same month another of $2,680; and these payments, he having given no direction as to their application, were passed to his credit, in general account, as of those dates.

As collateral security for their acceptance of the draft for $1075, stated in the above account, the plaintiffs took from John G. Friend a bill of sale of three negroes, with a defeasance, conditioned that they would return the negroes if said N. G. Friend furnished them with funds to meet said acceptance. The bill of exceptions states, that two of these negroes "were found by the defendant, on the plantation of said N. G. Friend in Greene county, in the fall of 1853, and

were taken by him, as administrator of said Friend, and sold ; and that the other was also levied on by the sheriff of Greene county, and sold by him, to satisfy certain executions then in his hands against said Friend".

Upon this evidence, the court charged the jury, substantially, that if plaintiffs were the commission merchants of said Friend, and as such kept a general running account with him, and entered the notes on both sides of his account as above stated, and rendered an account to him on the 2d April, 1853, showing a balance against him of $5,750, and that Friend afterwards made said payments of $2,882 and $2,680, without directing their application,—then plaintiffs had a right to make the application of them ; "and that if they failed to make any application of said payments, but entered them generally to the credit of said Friend on the general account current, which included these notes, then the jury must apply said payments, first, to the aforesaid balance rendered by plaintiffs to said Friend, and plaintiffs were entitled to recover the difference between the amount of said balance ($5,750 23) and the amount of said payments, after making an accurate computation of interest on each of said amounts."

Plaintiffs excepted to this charge, and asked the following charges :—

"1. That if the jury believe from the evidence that there was more than $5,000 due from said Friend to plaintiffs when said notes were given, viz., on the 29th April, 1852, they must find a verdict for the plaintiffs, for the amount of the notes and interest.

"2. That if they believed from the evidence that there was due $5,000 from said Friend to plaintiffs when said notes matured, they must find a verdict for plaintiffs, for the amount of said notes and interest.

"3. That if they believed from the evidence that there was due to plaintiffs from said Friend, on the 2d April, 1853, the sum of $5,750 23, they must find a verdict for plaintiffs, for the amount of said notes and interest.

"4. That if they believed from the evidence that said payments of $2,680 and $2,882 67, made on the 6th and 9th June, 1853, or either of them, were made on account of plaintiffs' acceptance of Friend's draft for $1,075 on the 26th April,

1853, and the subsequent acceptance of $1200 on June 11, 1853, and of $2,500 on July 23, 1853 ; and that the three negroes named in said bill of sale were given up by plaintiffs, and were sold by defendant (as administrator of said Friend) and the sheriff,—then they must find for the plaintiffs, for the amount of said notes and interest.

" 5. That if they believed all the evidence, they must find for the plaintiffs, for the amount of said notes and interest."

The court refused each of these charges, and to each refusal the plaintiffs excepted ; and they now assign for error the charge given, with the refusals to charge as requested.

WM. P. WEBB, for the appellants :.

I. The charge given by the court is erroneous, because,—

1. It assumes that the entry of the two notes, first on the credit, and then on the debit side of the account, and carrying them into the balance rendered, consolidates the two notes with the account, so as to constitute but one debt; whereas, there were two distinct debts. If the entry was so made, plaintiffs would not be bound thereby, nor would defendant be discharged from his liability on the notes.—American Leading Cases, Notes by Hare & Wallace, vol. 1, p. 290, and cases there cited.

2. It conflicts with the principle, that where a creditor holds two claims, one an open account, and the other secured by bond or note, and a general payment is made, which is not applied by either the debtor or the creditor, the court will instruct the jury to apply it to the account.—1 American L. C. (by H. & W.) pp. 286–96.

3. It assumes that the notes, having been entered on both sides of the account, were by that act changed into a mere item of debit and credit on the account current, and stood on no higher ground than any other item of account, or balance struck ; while the evidence shows, that the credit, given when the notes were received, operated as a *bona fide* credit and cash advancement to Friend ; and the effect of the debit and credit was, to leave the account just as though no entry of the notes had been made. Have the notes been paid by the entry, when they are still held by the plaintiffs, and were not given up when the account was rendered ? or has the entry changed

the character of the debt, from notes with security, into an open account ?

4. The rule adopted by the court, in the charge given, applies only to the case of an open account current, " the items of which do not form distinct debts", and not to such a case as this, where the items do form distinct debts—viz., one from Friend and Johnston on the notes, and the other from Friend on the account; and the rule does not apply to this case, for the further reason, that a different intention is to inferred from the course of dealing between the parties.—1 American L. C. (by H. & W.) pp. 299, 300, and cases there cited ; Dulles v. DeForest, 19 Conn. 191, 204.

5. The charge erroneously assumes that the account rendered to Friend on the 2d April, 1853, was a settlement with him ; while the evidence shows that it was merely intended as a "memorandum statement." But, even if it was an account stated, and balance struck, the defendant was bound for that balance, to the extent of the notes ; and the subsequent payments were on a new account, and on different security. The court, therefore, should have directed the credits of the 6th and 9th June to be applied, first, to the extinguishment of the items of the account current included in that balance, and to the subsequent debts of $1075 and $1200, before applying them to the notes sued on.—Authorities *supra*. If this action had been brought against Friend himself, he could not have insisted on the appropriation directed by the court, because he had incurred subsequent indebtedness, which swelled his entire debt to $8,118 14 ; and, under the rule adopted by the court, the payments in June should have been applied to the reduction of this balance. If Friend himself could not have insisted on the application directed by the court, Johnston, as his surety, stood on no higher ground.

6. The defendant's liability on the notes was fixed when the notes matured, and not when the account was rendered in April afterwards ; and the witness Louden swears, that if Friend's account had been made up to January 16, 1853, the balance against him would have been about $1,500, besides the notes, if they were not paid at maturity.

II. The court erred in refusing the fourth charge asked. The plaintiffs' answers to the interrogatories, and the receipt

attached to Louden's deposition, show that the payments made in June were made and applied in consideration of Friend's draft for $1075 and subsequent acceptances; and the court should have directed the jury to apply the payments according to the intention of the parties. The refusal of this charge invaded the province of the jury, by withdrawing from their consideration the evidence which tended to prove this intention.

III. The fifth charge asked should have been given.—Authorities cited *supra*.

JOHN T. LOMAX and S. F. HALE, *contra:*

The notes were not given for the previous indebtedness of Friend, except as to $394 99, the amount due when they were delivered. They were given, as the witness says, for " *a fictitious credit*", on which Friend could obtain advances. They necessarily entered into the account current, as the advances which were made on them ; and, consequently, were subject to the rules and principles governing mercantile accounts, which apply the payments to the oldest items in the account.

The principle established in Mayor of Alexandria v. Patten, 4 Cranch, 317, and in the analogous English and American cases collated in 1 American Leading Cases, 268, *et seq.;* to which plaintiffs' counsel refers, applies to cases where separate and independent debts are created at the time the credit is given, or the security taken ; and, though there is some conflict in the decisions, we admit the weight of authority sustains the doctrine as expounded by Marshall, C. J., in that case. The able annotators, after reviewing these cases, on pages 298 and 300, distinctly lay down a different rule applicable to accounts current, and (with many cases) refer to the case of United States v. Kirkpatrick, 9 Wheat. 720–37. See, also, Fairchild v. Holly, 10 Conn. 175; Dulles v. DeForest, 19 *ib.* 191; Upham v. Lafavour, 11 Metc. 174; Jones v. United States, 7 Howard, 681; Truscott v. King, 2 Selden's R. 147. And the testimony and accounts are persuasive (if not conclusive) that the plaintiffs adopted and acted on this rule in regard to the note for $5,000 credited on the 10th of June, 1851, and which was delivered up when the items credited exceeded the debits secured by the note, from and after that date.

The plaintiffs are estopped by the account as rendered. The amended account produced on the trial, by which they seek to evade this rule, was not made out till after issue in the cause, and the defendant's testimony had been taken. Bank of North America v. Meredith, 2 Wash. C. C. R. 47; Seymour v. Morrison, 11 Barb. 81; Millikin v. Tufts, 31 Maine, 497; 9 Wheat. 737; 10 Conn. 184; 1 Am. L. Cases, 289 and 290. On the rendition of the account, the balance stated becomes a consolidated debt, which the creditor cannot vary, to the prejudice of a surety.

In no case (in the absence of an express agreement), whether for separate and distinct debts, or in accounts current, can payments be withheld to be applied to debts subsequently due.—1 Am. L. C. 275–287; Laws v. Sutherland, 5 Gratt. 357; Bacon v. Brown, 1 Bibb, 334. And for these last items in the account, the plaintiffs had independent security, which they voluntarily relinquished.—1 Ala. 23; 22 *ib.* 575.

The charge asked for was improper. There was no evidence tending to show that any positive direction was given as to either of the items credited after 2d of April, 1853. The court, by the terms of this charge, was required to deny the defendant the benefit of both sums, if either had been specially applied to other items.

GOLDTHWAITE, J.—The case upon the record stands thus : The appellants were the factors and commission merchants of N. G. Friend, and there was a current account kept up between them, from April, 1850, until the death of Friend, which was subsequent to July, 1853. On the 29th of April, 1852, if the accounts had been made out and the balance struck, Friend would have been indebted about $400 ; and on that day, he made two notes, each for $2,500, payable at nine and ten months, with the appellee, Johnston, as surety ; which he delivered to the appellants, who passed them to his credit on their books, and held them as bills receivable, and charged them against him in general account when they became due. An account was made up against Friend, on the 2d April, 1853, consisting of many debits and credits, in which the notes were thus charged and credited ; and the balance which ap-

pears to be due from Friend at that date was $5,750, which balance was carried forward, and the account continued to 22d July, 1853, up to which time he was charged with the following additional items :

"Doct. N. G. Friend in account with Harrison & Robinson.

1853.            Dr.

| | | | | |
|---|---|---|---|---:|
| Apl. 2. | To balance, as pr. account rendered, due us in cash, | | $5750 | 23 |
| " 8. | " invoice goods, pr. Ambassador, | | 36 | 03 |
| " 26. | " acceptance yr. dft. favr. J. G. Friend, due May 21–24, '54, | 1075 | 00 |
| " " | " commissions accepting do. | | 26 | 88 |
| June 11. | " acceptance yr. dft. favr. self, due March 1–4, '54, | 1200 | 00 |
| " " | " commissions accepting do. | | 30 | 00 |
| July 22. | " acceptance dft. favr. J. G. Friend, due Jan. 1–4, '54, | 2500 | 00 |
| " " | " commissions accepting do. | | 62 | 00 |

On the 6th June, 1853, Friend made a payment of $2,882 67, and on the 9th June of the same year another of $2,680, giving no direction as to the application ; and these payments were passed to his credit in general account, as of those dates. Suit is brought against Johnston on the notes, and the question is as to the application of these payments.

If we concede the rule, as contended for by the counsel for the appellants, that when a partial payment is made, by one owing distinct and separate debts, the law, if called upon to make the application, will apply the payment to the debt which is the least secured, or most precarious ; still this principle does not apply in the case presented by the record before us. The evidence here shows, that the appellants were the factors and commission merchants of Friend, and that there was a running account between them ; and in that case, a different principle applies, and there, in the absence of any application of the payments by the parties, the law applies them to the charges in the order of time in which they accrue, without reference to the fact that one item may be better secured than another.—Clayton's case, 1 Mer. 608; Bodenham v. Purchas, 2 B. & A. 39; Brooke v. Enderby, 2 Brod. & Bing. 70; Story's Eq. § 459 g. It does this, on the principle, that such an appropriation is most consonant to the intention of the parties. Where the factor, from time to time, makes advances, receives payments, and blends the debts and the credits together in one common account, then the parts have no longer any separate existence, but it is the balance only

which is considered as due.—*Per* Bayley, J., in Bodenham v. Purchas, *supra.*

Suppose the firm of Harrison & Robinson, in which there were three partners, had been owing Friend, on the 2d April, $5,000, and on that day one of them went out of the concern, and Friend subsequently drew on the new firm, who continued the business for $3,000 ; then they sold cotton belonging to him, for $2,000, and he then drew upon them for $2,000 ; keeping a running account, and charging up the balance due from the old firm against the new, and the other items of debit and credit on general account :— would he be allowed, on the failure of the new firm, to say, 'I will hold the retiring partner of the old firm responsible for the balance of $2,000 which is unpaid' ? and would the law aid him to do so, by holding that the payments made by the new firm should be applied to the transaction on which the other partner was not responsible, because it was the most precarious debt. This is the precise case put by Sir William Grant in Clayton's case, and, in principle, it is identical with the one under consideration.

We would not be understood to say, that the rule is inflexible, or that it extends to cases in which the different transactions between two parties are made to assume the form of an account, when in reality the items of which it is made up are such as to repel any inference that there was intended to be any account running ; or where the character of the dealings is such as to show that it was not the intention of the parties that the payments should be thus applied. If a different application is expressly shown, or is to be inferred from the particular course of dealing, or from the particular circumstances of the case, the rule would not apply.—Taylor v. Kymer, 3 B. & A. 320, 333; Capen v. Olden, 5 Met. 268 272; Dulles v. DeForest, 19 Conn. 191, 204.

Here, however, the record discloses no evidence which would warrant the inference that a different application was to be made. There is an account opened with Friend by the appellants, who are his factors. Contemplating advances to be made by them, he passes to them the notes sued on for their security. They make advances, sell his cotton, charging the notes, as well as the advances made upon the faith of

them, and credit him with the notes and other payments made. The whole is blended together, and a balance struck against Friend as the result of all the transactions ; the account is rendered to him, and the balance carried forward to a new account, of which it forms the first item. Under these circumstances, upon principle as well as authority, the payments being charged to general account by the creditor, without making any other appropriation, he should be held to the election he has. thus made and manifested, and the payments be applied to the balance due, as rendered in the account of 2d April, which is the first item of the new account.

For the same reasons, the three first charges, as well as the last, requested, were correctly refused. There was no error in the refusal to give the fourth charge, for the reason that the payments made in June could not, in the absence of evidence showing most unmistakably the intention of the parties, be referred to debts which had not even an existence at that time.—Gass v. Stinson, 3 Sumn. R. 99; Pattison v. Hull, 9 Cowen, 765, 773, 777.

Judgment affirmed.