## Stickney v. Moore *et al.*

*Bill in Equity to Foreclose Mortgage and for Accounting.*

1. *Usury. Interest on interest note.*—The payment of interest on overdue installments of interest evidenced by separate notes for interest on the principal, does not constitute usury. Such notes when given at the time of the accrual of the debt, draw interest from their maturity if not then paid, and this will be allowed either at law or in equity.

2. *Same: Who may plead usury.*—Usury is a personal defense, and cannot be set up by a stranger to the contract, but only by the parties or their legal representatives. A junior mortgagee cannot plead usury against a prior incumbrance.

3. *Same: What necessary in a plea of usury.*—To be sufficient, a plea of usurious payments must distinctly and correctly set forth the terms and nature of the usurious agreement, and the amount of the payment.

4. *Application of payments.*—The rule that in the absence of an application by either party, the law applies a general payment on a running account, to the several debits in the order of time in which they accrued, is subject to the qualification that a different application should be made when such is shown to be in accordance with the justice and equity of the case, or intention of parties as deducible from the circumstances.

APPEAL from Hale Chancery Court.

Heard before Hon. W. H. TAYLOE.

This bill was filed by Mary E. Childress and her husband Jefferson V. Childress against Jas. P. Moore, Thomas G. Moore, Mat Moore, Richard H. Stickney, Madison Jones, L. J. Lawson, Stith Evans and the Scottish American Mortgage Co.

The bill alleges that being indebted to the complainant, to secure the same the defendants James, Thomas and Mat Moore did on September 11th 1882 execute to her a mortgage on the lands described therein, and that they did on the same day execute to the Scottish American Mortgage Co., a mortgage on the same lands. It was in this connection further alleged that it was understood and agreed between all the parties that the lien of the mortgage to the Scottish American Mortgage Co.

should be superior to that of complainant Mary E. Childress. The bill also alleged that the mortgage debt due complainant was due and unpaid ; that a large part of the debt to the Mortgage Company had been paid, and that the Moores were insolvent. It alleged that the other defendants claimed some interest in the lands. The prayer of the bill was for an accounting to ascertain the amount of the various liens on the land, and for a foreclosure of the mortgages mentioned in the bill, and any that might be propounded by other defendants.

The defendant Lawson answered that he held a mortgage on the lands executed to him by the Moores on October 11th 1883, and consented that it be foreclosed as prayed by complainants.

The Scottish American Mortgage Co. answered, showing the amount claimed by them under their mortgage. The Moores filed a joint answer, admitting the mortgage to complainant, and also, stated that they had executed mortgages to defendants Stickney, Jones, Evans, and Scottish American Mortgage Company. They alleged that the debt due Stickney had been fully paid, and that the debt secured to the Mortgage Company was tainted with usury, in that certain notes given for interest on the sum loaned, provided that they should bear interest if not paid at maturity, and also, that they had received only a part of the principal named in the mortgage, the balance thereof, towit, the sum of $952.00 having been retained by one Francis Smith, alleged to be agent of said Mortgage Company, for the purpose of paying attorneys and other expenses of the mortgagee in making the loan. Afterwards, this answer was amended, by alleging that the debt claimed by Stickney was usurious and void "for $2,500.00 which is included in the note for the principal, and $200.00 which was charged as usury on open account." Also by this amendment, they prayed that the answer be treated as a crossbill, and that the usury in the various debts as therein set out, be stricken out. The answer of Stickney denied usury in his mortgage, and insisted that a balance was still due him thereon. Madison Jones answered, setting up a mortgage executed to him by the Moores, and alleging usury in the debt due by them to the Mortgage Company. To the cross bill, the Scottish American Mortgage Company answered, to the effect that it had loaned the

Moores the full amount stipulated as the principal in their mortgage : that this principal was represented by several promissory notes, and that at the same time, several separate notes were executed to it for the interest to accrue on said principal. They alleged that certain of said notes so given for interest not being paid at maturity, they charged and received interest thereon from such maturity to the time of payment. They denied that Smith or anyone else was authorized as their agent to charge or receive any fees or commissions, and that they had neither charged or received over eight per cent interest on the loan.

So far as the evidence, and rulings of the lower court bear upon the points decided in the opinion, they are sufficiently shown therein :

SEAY & DE GRAFFENRIED and JOSEPH H. NATHAN, for appellant.

Interest upon interest notes when stipulated for at the time of the loan, is not allowed in equity, though it may not be usurious. To do so would be inequitable.—*Force v. City of Elizabeth*, 28 N. J. Eq. 403 ; *Ib.* 404 to 408 notes ; *Mathews v. Toogodd*, 28 Neb. 536 ; *Eslava v. Lepetre*, 21 Ala. 504 ; *Paulling v. Creagh's admr.*, 54 Ala. 646 ; 27 Am. & Eng. Enc. L. 997.

The proceeds of the crop of 1885, paid Stickney should be applied to the mortgage debt.—*Askew v. Steiner*, 76 Ala. 222 ; *Taylor v. Cockrell*, 80 Ala. 236 ; *Strickland v. Hardie*, 82 Ala. 414.

A junior incumbrancer, in case of the insolvency of the debtor, can plead usury against a prior incumbrance.— 27 A. & E. Enc. L. 951 N. 2 ; *Hudnit v. Nash*, 16 N. J. Eg. 542 ; *Cole v. Bansemer*, 26 Ind. 94 ; *Woolley v. Alexander*, 99 Ill. 391 ; 79 Ga. 36 ; *Dix v. Van Wick*, 2 Hill 522.

G. B. JOHNSTON, *contra.*—A stipulation at the time of the loan, that interest notes which are given separately, shall bear interest after maturity is not usurious.—*Guin v. N. E. Mtg. Co.*, 92 Ala. 135 ; *Caldwell v. Dunklin*, 65 Ala. 461 ; 2 Jones Neg. In. par. 1513 ; Jones on Corp. Bonds & Mtges. 256 ; *Cromwell v. Soc. 6 Otto*, 96 ; 107 U. S. 529.

When recoverable at law, interest will be allowed in

equity.—*Crocker v. Clements*, 23 Ala. 296; *Chambers v. Wright*, 52 Ala. 451.

HARALSON, J.—1. The rule seems to be well established that the payment of interest on overdue installments of interest, evidenced by separate notes for interest on the principal, does not constitute usury; and that interest is recoverable upon coupons after their maturity, which were given at the time of the accrual of a debt, for the annual interest accruing thereon; for, being promissory notes, it is regarded as just, that if not paid when due, they should draw interest, by way of damages for the detention of the money. This principle was recognized by this court, in the recent case of *Guin v. N. Eng. M. & S. Co.*, 92 Ala. 138; *Tilford v. Gavels*, 24 N. E. Rep. 573; *Harper v. Ely*, 70 Ill. 581; *Aurora v. West*, 7 Wall. 82; *Pance v. Bowler*, 107 U. S. 529. In *Caldwell v. Dunklin*, 65 Ala. 464, it was said, "Each coupon attached to the bonds, for the payment of interest, was, of itself, a separate contract for the payment of money at a particular time; and if it was not paid at the time appointed, interest followed as an incident. So, of the principal; if not paid at the time appointed, interest attached. Whenever there is a contract for the payment of a specific sum of money, at an appointed time, and there is neglect or failure to pay, the contract is broken, and interest follows." Mr. Freeman, in his notes to the case of *Morris Canal Co. v. Fisher*, 64 Am. Dec. 423, states the doctrine as we have stated it above, and supports it by a long array of decisions of many courts. To the same effect, with collation of authorities, see 4 Am. & Eng. Ency. of Law, 439. In the 27th Vol. of this work, p. 998—citing the decisions of several States, including our case of *Guin v. New. Eng. M. & S. Co.*, 92 Ala. *supra*—it is said: "The more reasonable doctrine is, that such stipulations are not usurious, being merely intended as compensation to the creditor for being deprived of the use of interest." But, it is added: "In a number of States, the courts have drawn a distinction between agreements of this character, made prior to default in payment of interest, and similar agreements, made after such default; and they hold, that only in the latter case can agreements for interest on interest be lawfully made." But we appre-

38

hend, this doctrine will not be held to apply to annual coupon notes to a principal note, as in this case, all secured by mortgage for the loan of money. Nor, when properly construed, are the cases of *Eslava v. Lepetre*, 21 Ala. 504, and *Paulling v. Creagh*, 54 Ala. 646, in conflict with this rule. Counsel for appellant make the contention that if the principle as announced be correct, it must be confined to cases at law and cannot be enforced in equity. But this distinction can not be allowed. If interest on these coupons may be enforced at law, as an incident to the debt, it will be allowed in equity. The rule in equity generally is, to allow interest whenever it would have been recoverable at law.— *Croker v. Clements*, 23 Ala. 290; *Chambers v. Wright*, 52 Ala. 451.

2. The second question presented on this appeal is, whether a junior mortgagee, in case of the insolvency of the debtor, can plead usury against a prior incumbrance. The courts of New Jersey, New York and Indiana seem to hold the affirmative of this proposition, but it is held contrariwise in many of the other courts. For a citation of the authorities on the question, see 27 A. & E. Enc. of Law, 951. In Alabama it has been long held, that usury is a personal defense and cannot be set up by a stranger to the contract, but only by the parties or their legal representatives. *Griel v. Lehman*, 59 Ala. 419; *McGuire v. Vanpelt*, 55 Ala. 344; *Kilpatrick v. Henson*, 81 Ala. 464; *Welsh v. Coley*, 82 Ala. 363; 3 Brick. Dig. 574, § 47.

3. Again, the chancellor very correctly held, that a party who has made usurious payments on a debt, can not obtain credit therefor unless he distinctly and correctly sets forth in the pleadings, the terms and nature of the usurious agreement and the amount of the payment. No attempt of this character was made by the Moores in this case. Their statements of usurious payments were very general and loose, such as a court, for the best of reasons, would disregard. *Munter v. Faber*, 61 Ala. 492; *S. L. Asso. v. Lake*, 69 Ala. 456; *Woodall v. Kelly*, 85 Ala. 374.

The exception to the statement of the account of the Scotch A. M. Company, by the register was, that he allowed interest, at the rate of eight per cent per annum, on over-due annual interest coupon notes on their mort-

gage debt loan notes, which exception was properly
overruled.

4.   On the first reference in this case, R. H. Stickney
was examined as a witness in his own behalf.   He testi-
fied he did business with the Moores in the year 1883,
by way of making advances to them, and had a mort-
gage on their crops that year, and on their personal
property ; that he demanded payment of them at the
close of that year, or for the property embraced in the
mortgage ; that said Moores proposed to him, that in-
stead of his selling the personal property in the mort-
gage at public sale, they should agree between them-
selves on the value of the property, and that he, Stick-
ney, should take it at that valuation ; that as he was
going to sell the property, he might as well let them
have it, as any other person ; that this proposition was
agreed to, and they and Mr. Tutwiler, representing
Stickney, valued the property at $2,625 ; that this agree-
ment was in writing, and the Moores were accordingly
credited on their mortgage debt with the agreed valua-
tion.   Stickney immediately sold the Moores the same
property, at $2,845, payable the next Fall—an advance
on which they bought it, of $220.   The Moores gave
Stickney, at the time of their re-purchase of said prop-
erty, a mortgage, dated 18th March, 1884, on the same
property, to secure its purchase price, and $1,500 in ad-
dition, making $4,345, alleged in the mortgage to be for
advances in mules, horses, farming utensils, provisions,
&c., to enable them to make a crop during the year
1884.   The note given for this sum was payable on 15th
November, 1884, and the mortgage was foreclosable on
default of payment, after that day.   The lands in suit
were also embraced in said mortgage.   On this mort-
gage, it appears there was advanced by Stickney during
the year, for the purpose of making a crop, the sum of
$1,637.87, making, with the $2,845, the price at which
he sold the stock to the Moores—the sum of $4,482.87.
He  testified  that  he  received  from  the  proceeds
of  the  cotton  made  and  sold  that  year,  the  sum
of $1,448.87, leaving due him, at the close of 1884, by
the Moores, the sum of $3,034 ; that in the year 1885, he
advanced again to them, in various sums and for pur-
poses specified in his account detailing all the transac-
tions, the further sum of $1,538.31 ; making with the

[Stickney v. Moore *et al.*]

balance due from 1884, the sum of $4,572.21; that during the year 1885, he received from them, in the shape of the proceeds of cotton and of mortgaged mules sold by them to their tenants, the sum of $2,258.68, which, deducted from the $4,572.21, left a balance due him by the Moores, on 1st of January, 1886, of $2,313.53, as shown by an account attached to his deposition marked B. That account is made out in detailed form, i.₁ accordance with the above statement of debits and credits, showing a balance due at the close of 1884, by the Moores to Stickney, of $3,034, which sum is carried by him into the account of 1885, as its first debit item. To the correctness of the items composing this account B., exhibited to his deposition, said Stickney deposed, and, indeed, they are not contradicted.

5. With the foregoing statement we may approach the points of objection and exception raised by Stickney in this statement of his account, as passed and allowed by the chancellor. It was held by the chancellor to be a running account. It was proved by the Moores, that the items of interest charged were usurious, and that fact is admitted by Stickney. In restating the account, therefore, it was ordered that usury should be eliminated, and legal interest alone should be calculated on both sides. It is not understood, that there was any objection to this order, or to the manner of its execution, in the statement of the account by the register. But, it appears, that in 1885, the Moores paid to Stickney, proceeds of cotton raised that year, to the amount of 1,335.68. Up to this point, it had not been attempted to be shown, that Stickney had any mortgage or other lien on the crops of 1885, nor was it shown, that in making the payment, the Moores gave any direction as to its application. Stickney had shown, that he had paid to and for the Moores in 1885, the amount of $1,186.34, as appears in his itemized account B., attached to his deposition, to the correctness of which he swore, and he is uncontradicted. He further swore, as to his said mortgage of March 18, 1884,—to quote his own language,—that "it was partially paid for, out of the crops and the sale of the property. My account hereto attached, marked Exhibit B., for the years 1884 and 1885 will show what payments were made thereon and how. The sale of the property was shown by the mortgage above mentioned, and the

payments subsequently made are shown on the account mentioned." Now, as we have before stated, none of the items of this account are disputed as being correct in fact, and that Stickney,—commencing in 1882, and coming on through each succeeding year,—in keeping his accounts with the Moores, carried the balance of each year into the account of the succeeding year. The last items of credit, amounting to $923, were made on said account, on the 30th of January, 1886. The chancellor excluded said sum of $1,335.98 from the payment of any loans or advances which were made by Stickney to the Moores in 1885, and directed that the sum should be applied towards the extinguishment of the said prior mortgage to Stickney on the lands in suit, of date 18th March, 1894. He based his ruling on the principle often decided, that in the absence of application of payment by either of the parties, the law applies a general payment on a running account, to the several debits in the order of time in which they accrued, without reference to the fact that one may be better secured than another, on the principle, that the parts have no longer a separate existence, and it is the balance only which is considered as due. *Spies v. Price*, 91 Ala. 166 ; *Harrison v. Johnson*, 27 Ala. 445. This principle applies where there are several distinct demands, or to a running account consisting of several items of debit and credit, unless facts exist which show that, according to the justice and equity of the case, or the intention of the parties deducible from the circumstances, a different application should be made.—*Johnson v. Allen*, 78 Ala. 394 ; *Robinson v. Allison*, 36 Ala. 531 ; *Bobe v. Stickney*, 36 Ala. 495 ; *Ala. Gold Life Ins. Co. v. Sledge*, 62 Ala. 566 ; 2 Gr. Ev. §§ 529, 533.

On his second examination, Stickney not having shown that the moneys that came to his hands in 1885, were by any separate agreement not to be applied to this mortgage on the land, applied to the register, and he allowed him in the absence of the parties, to amend his deposition, after it had been closed, showing that such moneys by agreement between him and the Moores, were to be applied for specific purposes. The register in his report, under this evidence, treated the proceeds of cotton received in 1885, as applied to such purposes, and not in reduction of said mortgage debt of the Moores on said lands. The court, on exceptions to that part of the re-

port, set it aside, holding that such moneys were to be treated as a credit on said mortgage debt. He ordered another reference, upon the execution of which, it was directed, that no new oral testimony should be taken by the register, except by leave of the court, first obtained, for which any party might apply in term time or vacation, but that pertinent and legal documentary evidence might be proved and received. Thereafter, before the execution of said reference, said Stickney applied to the chancellor in vacation, representing that there was certain oral testimony of petitioner which was necessary to the full consideration of the cause, as was shown by the previous testimony taken before the register which was excluded by the decree of the court, and praying for leave to retake the oral testimony of petitioner on the reference. This application was overruled. On the execution of the reference, the register refused to allow said Stickney to be examined orally. Whereupon said Stickney offered in evidence certain documentary evidence, set out in the transcript in the shape of mortgages by S. P. and Mat Moore on the crops to be grown on different parcels of said lands in the year 1885, to secure advances to be made to them during that year. Objection was made to his receiving such evidence, but the register overruled the objection and admitted it, and stated the account in two alternative forms, one marked A, giving force and effect to the evidence, and the other marked B., without such effect. On the coming in of the report, the court sustained the exception to the admission of the evidence, and confirmed the latter finding of the register, in which he applied the proceeds of the crops of 1885 to the mortgage, of the 18th of March, 1884,—on the lands in suit. By the first statement, A., he ascertains that there remained due and owing Stickney, on the 20th Sept. 1894, the sum of $2,913.29, and by the other, B., the sum of $1,328.19. Neither account is attacked for any alleged error of calculation.

In the ruling of the chancellor adopting and confirming the latter instead of the first of these reported accounts, there was error. Stickney on his first examination had rendered his account B., heretofore referred to in which, having carried the balance due him from the year 1884, he had charged the Moores with all he had advanced them in the year 1885, making with the balance

from 1884, the sum of $4,572.21. From this, he deducts the proceeds of cotton received that year, to the amount of $1,335.68, and the prices of the mules included in the mortgage which had been sold—$923—together, making credits to the amount of $2,258.53. This account shows Stickney's method of accounting with the Moores. His was an open account, showing the balance at the end of each year. It also shows his intention, unmistakably, not to charge himself with moneys he received in the course of the year, without giving himself credit, in the same account, with moneys paid out—not, in other words, to assume debit liabilities without corresponding credits for sums disbursed. The effect of the chancellor's ruling is, to charge him with moneys received in 1885, but not to allow him anything for moneys the proofs show he paid out in the year. The presumption is, he would not have advanced to the Moores in 1885, when they were already heavily indebted to him, probably beyond their ability to pay, without the privilege of crediting himself, as against such advances, with what sums the Moores might pay him in 1885, and by so doing, apply such payments to reduce the former debt secured by mortgage on the Moores' lands, and not apply them to these new advances. Surely, there would have been no good business sense in such procedure, and there appears to be a striking lack of justice in it. The obvious equity of the situation would be, to apply the proceeds of the cotton of 1885, to the debt of that year, and the method of Stickney's accounting, shows that such was his intention, and such was its effect. To leave both in, is the same as to strike both out, but the debit and the credit ought to go together, whether in or out. If one remains the other ought.

Without any other proof, if charged with the proceeds of the cotton raised in 1885, he was entitled to sums paid out for the Moores in that year. But, in addition to this, to bring himself still clearer within the equities of his claim, he proposed to show and did show, within the terms of the decree of reference, that he had mortgages on the crops of 1885, justifying the retention of the crops of that year, to the extent of the advances made within the year. By carrying all into the account of 1885, he accomplished just what, in equity, ought to

have been done. The surplus of receipts from cotton, over the sums paid out, was thus carried to the reduction of the land mortgage. We hold that the sum of $2,913.39, the sum ascertained by the first of the accounts, A., stated by the register in his last report, is the amount due the appellant, Stickney, on the 20th of September, 1894, and the decree of the court below will be here accordingly so corrected, and as corrected affirmed, and the register upon being certified of the correction here made in, and the affirmance of the final decree of the court below, as corrected, will proceed to execute the same according to its terms.

6. The admitted usury in many of the transactions between appellant, Stickney, and the Moores, on proper pleadings would have justified its elimination in a restatement of accounts between them, but the chancery court properly held, that the Moores, by the loose and imperfect statements in their cross bill, did not bring the matter before the court in the form entitling them to relief. So, there was no error in not going behind the settlement between the parties, carried into effect by the mortgage of the 18th of March, 1884.

7. As has been above stated, the mules included in the mortgage of 1883, were valued and taken by Stickney at the agreed price of $2.625., and immediately sold back to the Moores at $2,845., at a gain of $220. All of this was but one transaction. Stickney deposes, that this was done at the instance and for the accommodation of the Moores, and that the $220. difference, was on account of a credit till the Fall of the year. Two of the Moores swear that this difference between what they sold the mules for, and what they had to pay for them, was a device for usury. Usury, as was not denied, had been consistently charged against the Moores in some, if not all their dealings with Stickney, and it was no difficult matter for the court to give credence to their statement, that this was a usurious device, and we find no fault with his conclusion as to that matter. This conclusion was reached by him, we may add, without discrediting the statements of Mr. Stickney. He does not swear that the difference in the purchasing and selling price, was not to give him a usurious interest.

Let the appellant pay one-fourth of the costs of appeal

[Griel v. Randolph.]

of this court and of the chancery court, and the appel-
lees, the remaining three-fourths.

Corrected and affirmed.