[Montgomery Bank & Trust Co. v. Jackson.]


# Montgomery Bank & Trust Co. *v.* Jackson.

*Bill to Determine Priority and to Subject Property.*

(Decided November 7, 1914.   Rehearing denied December 17, 1914.
67 South. 235.)

1. *Novation; Requisites; Discharge of Existing Obligations.*—In order to constitute a novation, the extinguishment of the original contract and liability thereunder must be the result of a new and independent contract, and whether there is a substitution of a new contract for the original, depends on the intention of the parties to be deduced from the facts in each case.

2. *Same.*—Where a stockholder was indebted to a corporation on a note for money loaned to him, and the corporation as an extension of the note received a new note executed by a third person as maker, and the stockholder as endorser, the original note was not extinguished by novation, and the corporation, having a lien under section 3476, Code 1907, on the stock as against the original note, retained the lien as against another creditor of the stockholder.

3. *Bills and Notes; Payment; New Notes.*—The execution of a new note was not a payment of the old note in such a sense as to extinguish the lien of the corporation on the shares of the stockholder.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Bill by William Jackson against the Montgomery Bank & Trust Company to determine priority of debt, and to subject the property and assets on which the corporation has a lien for the payments of its debts, other than the stock held by complainant, and for an order of sale for the stock, and the payment of complainant's debt out of the proceeds of same. From a decree for complainant, respondent appeals. Reversed and rendered.

BALL & SAMFORD, for appellant.

W. A. GUNTER, for appellee.

McCLELLAN, J.—This bill sought, and the decree below made effective, a lien, in favor of complainant

(appellee Jackson) upon shares of the capital stock of the appellant banking company superior to that asserted by the banking company, another creditor of the common debtor, Lasseter, as upon the right provided by Code, § 3476, which, as presently important, reads: "All such corporations have a lien on the shares of its stockholders, for any debt or liability incurred to it by a stockholder, before a notice of a transfer or levy on such shares. *   *   * "

The conclusion there prevailed: "That there was a complete novation of the original contract of indebtedness of Lasseter to the bank when the bank took his (Lasseter's) liability as an indorser to the note in question and discharged him of his primary liability as a maker of the note February 28, 1912. The novation of the contract of indebtedness of Lasseter to the bank was made after notice to the bank of the hypothecation of the stock by Lasseter to Jackson. *   *   *"

(1) An essential factor in novation is the discharge from liability, under the original contract, of him who is bound by the original obligation of which novation is asserted. The "extinguishment of the old contract" must be a result of the new, independent contract.— 29 Cyc. pp. 1130, 1131, 1133-1136; *McDonnell v. Ala. Ins. Co.*, 85 Ala. 401, 413-415, 5 South. 120. Whether in a given case this essential feature, viz., substitution of a new contract for the old, was present, is a question of intention, to be deduced from the facts and circumstances.—*McDonnell v. Ala. Ins. Co. supra;* 29 Cyc. pp. 1134, 1135.

In order to sustain the view prevailing below, it must be found from this record that there was an intent, common, at least, to the banking company and the original debtor, that the original contract of February 27, 1912, was extinguished by the dealings of March 28,

1912, in which dealings the banking company accepted notes of the Hill Crest Land Company, indorsed by Lasseter.

(2) By the agreed statement of facts the presence of that intention is affirmatively denied. That agreement contains these recitals: "That the Montgomery Bank & trust Company held, as collateral security for these loans, the various items as set out in the answer to the first interrogatory, and on the 27th of January, 1913, foreclosed its several collateral mortgages and all of the collateral held, except as hereinafter stated, buying in the same itself, at and for the sum of seven thousand one hundred forty-six dollars ($7,146), which said seven thousand one hundred forty-six dollars ($7,-146) was at that time due to the Montgomery Bank & Trust Company by the Hill Crest Land Company, for the principal, interest and attorneys' fees on three notes due October 1st, November 1st, and December 1st, 1912, which three notes were a continuation and extension of the amount due to the Montgomery Bank & Trust Company before that time, extending back to December, 1910; the said debts being originally contracted by L. Lasseter & Company. That, in addition to the amount above set out. the Hill Crest Land Company was and is still indebted to the Montgomery Bank & Trust Company, upon a note dated March 28, 1912, and indorsed by L. Lasseter, payable on demand, which said note is an extension of a note given by L. Lasseter for money loaned him on the 27th day of February, 1912, payable on demand, to secure which there was deposited at the time warehouse receipts representing forty (40) bales of cotton, which cotton subsequently, without the consent or knowledge of the bank, was sold and disposed of by G. L. Harden & Company, of which firm L. Lasseter was a partner, to parties unknown to

respondent, and both G. L. Harden and L. Lasseter have since been declared bankrupts; none of the proceeds of which were paid to the Montgomery Bank & Trust Company, and for which it has received nothing."

It there appears that the dealing of March 28, 1912, was an extension of original obligations, both from Lasseter and the Hill Crest Land Company; and that the note of the last-named date, signed by Lasseter as indorser, was "an extension of a note given by L. Lasseter for money loaned him on the 27th day of February, 1912." These terms affirmatively exclude the the idea that the original obligation of February 27, 1912, was intended to be extinguished. On the contrary, the process and intent was to continue that obligation, and not to substitute for it the contract or contracts of March 28, 1912. We do not find in the record any evidence of the surrender by the banking company of the note of February 27, 1912. If Lasseter had not become a bankrupt, and the banking company had sued him on the note of February 27, 1912, he could not, on the facts here disclosed, have sustained a defense that his liability under the contract of February 27, 1912, had been extinguished by the subsequent acts and dealings of March 28, 1912. The fact that the banking company accepted, on March 28, 1912, cumulative security, whereon Lasseter was an indorser of the note of the Hill Crest Land Company, does not, of course, establish an intention on the part of the banking company, the creditor, to substitute the latter obligation for the former. The result is that, even though notice of the transfer of the shares of stock by Lasseter as collateral for the note given by him to appellee was effectively given the banking company's officer and representative on March 12, 1912, the lien of the banking company had theretofore attached to the stock, in virtue of the stat-

ute before quoted, and was not extinguished by a novation effected on March 28, 1912.

(3) It is further insisted for the appellee that the Lasseter note of February 27, 1912, was paid by the subsequent, in order, credit item, placed on the Lasseter account on the books of the banking company, which credit item was, in turn, based upon the obligations of March 28, 1912. The principle relied on in this connection is thus stated in the first and second headnotes of the leading authority cited on brief for appellee, viz., *Harrison v. Johnston*, 27 Ala. 445: "(1) When there is a running account between debtor and creditor, a general payment, in the absence of any application by the parties, and where the character of the dealings or other circumstances do not show a different intention, will be applied by law to the charges in the order of time in which they accrued, without reference to the fact that one item may be better secured than another, since the particular parts, being blended together in one common account, have no longer any separate existence, and the balance only is considered as due.

"(2) The foregoing rule applies in this case, where the defendant became surety for the debtor on a note given to his commission merchant, with whom he had a running account for advances made, cotton sold, etc., on which the note was credited when received, and debited when due; an account current being rendered to the debtor after the maturity of the note, showing a balance against him larger than the amount of the note, and the subsequent payments being credited on general account."

After restating the substance of the rule reproduced above, reference thereto was thus made in *Stickney v. Moore*, 108 Ala. 590, 597, 19 South. 76, 80: "This prin-

ciple applies where there are several distinct demands, or to a running account consisting of several items of debit and credit, unless facts exist which show that, according to the justice and equity of the case, or the intention of the parties deducible from the circumstances a different application should be made."

Of course, before there can arise in any case a question as to the application of payments, there must be a payment; that is, the delivery by the debtor or his representative of money or some other value with the intention on the part of the debtor to pay the debt in whole or in part and the acceptance thereof, by the creditor, as payment.—*Smith v. Pitts*, 167 Ala. 461, 468, 52 South. 402. An inquiry of payment vel non comprehends the ascertainment of intention.—*Lee v. Green*, 83 Ala. 491, 3 South. 785. Under the agreed statement of facts, particularly the features thereof before referred to in this opinion, there was no intention to satisfy and extinguish the obligation of which the dealing of March 28, 1912, was a continuation—an extension.

The lien created by the statute (section 3476) attached before notice was given appellant of the transfer of the stock to appellee; and it was not extinguished by probation or payment of the indebtedness by the dealings of March 28, 1912. The decree is laid in error. It is reversed, and a decree will be here entered denying the relief prayed in the amended bill.

Reversed and rendered.

SAYRE, DE GRAFFENRIED, and GARDNER, JJ., concur.