191 So. 211

**TAYLOR et al. v. FEDERAL LAND BANK OF NEW ORLEANS et al.**

**8 Div. 969.**

Supreme Court of Alabama.

June 15, 1939.

Rehearing Denied Oct. 12, 1939.

W. L. Chenault, of Russellville, for appellants.

Harris & Harris, of Decatur, for appellees.

FOSTER, Justice:

Insofar as the controversy submitted to this Court is concerned, this appeal involves that aspect of the bill in which appellants seek to have a quitclaim deed dated July 15, 1936, to appellee J. Roy Taylor declared to be a mortgage and to redeem the land included. The court declared it to be a mortgage, and decreed a redemption, fixing the amount necessary to be paid to effect a redemption, and allowed time in which to make payment.

Appellants complain of the amount found by the court to be due and unpaid in that connection.

The controversy hinges around the amount of a mortgage which appellants had made to their father, M. J. Taylor, for the sum of $2,710.80 on January 22, 1930, and which had been assigned by him to J. Roy Taylor on July 10, 1936. He was also a son of M. J. Taylor.

Complainants had given a first mortgage to the Federal Land Bank on January 2, 1930. When the deed was made to Roy by the complainant, the former advanced for the latter to the Federal Land Bank $1,132, which with the mortgage debt assigned to him by their father constituted the consideration for the deed as a mortgage. It was upon that basis, with some other small items, that the amount necessary to redeem was computed by the court. The only controversy here relates to the amount due on the mortgage which had been assigned to Roy by their father.

Appellant Walter contends that it should be for only $1,000, the amount agreed to be paid by Roy to his father for it. Roy claims the full face amount of it. Their father testified that the amount named in the mortgage was the correct amount of the debt secured by it; that when he sold it to Roy nothing had been paid on it; that he told Walter that he did not "expect to get more than $1000.00," and felt like it was a "pretty good sale" of it to Roy at that price; that Roy had not paid any of the price at the time this suit was filed, and has not paid all of it; that he hoped to work up a trade between Roy and Walter: that $1,000 was all he wanted, and so told them. Walter told him he would make Roy a deed if Roy would pay the $1,000; that $1,000 was all it was worth; that he understood it could be settled for $1,000 when he transferred it to Roy; but there was no such definite agreement between Roy and Walter that he heard; that Walter had told him he made the same proposition to another brother; that he understood it was discussed among the members of the family that Walter could settle this mortgage for $1,000; but heard no discussion between Roy and Walter that if he wanted to pay the place out he could do so for that amount; what Walter said to the witness "was that he was to make a deed to Roy, if Roy would pay me the $1000.00."

The deed provides for a "right to redeem the above land within three years from above date by paying off all the indebtedness thereon." This bill was filed a little more than six months after the execution of the deed.

Roy testified that at the time he bought the mortgage for $1,000 he told his father he would try to get for him the full value of this mortgage; that he had no agreement with Walter that $1000 was all that was to be paid on it.

Walter testified that the full amount to be paid on it was $1,000, and that Roy made no claim for more than that, but claimed to have paid about $940, and wanted that, and that the balance of the $1,000 was to go to his father; that he made arrangements at the bank for this $1,000 for the two; that Roy did not bring the deed to the bank and get the money.

R. L. Almon, an attorney, having no connection with this suit, testified that he was called upon by the cashier of the bank in connection with one or two loans to be made to parties who were buying different portions of the land from Walter; that the

assignment of the mortgage was not satisfactory, and he prepared a quitclaim deed to be executed by M. J. Taylor, whom he called Mike, but it was not executed, and they brought back another assignment of the mortgage executed by Mike. That a question arose of whether the $1,000 for the mortgage thus assigned was to go to Roy or Mike: that he advised that the draft be made payable to them both; that no other sum than $1,000 was mentioned in that connection. He further testified that "the main question in dispute, as I remember it, and the reason the deal fell through, was because they could not agree who was to get the $1000.00, whether Mr. Mike Taylor or Roy Taylor." That there did not seem to be any dispute about the amount of $1,000, but only who was to get it.

T. J. Summers testified that M. J. Taylor told him that Walter could settle his debt with him for $1,000, and he would be well satisfied.

. B. L. Moore testified to a conversation he heard between Roy and Walter in which the debt to their father was referred to as being $1,000.

Everett Flannagin testified that he had arranged to buy forty acres from Walter for $1,000. Roy and Walter were trying to adjust and settle the debt on this place. That Noah Jeffries was to buy the home place, sixty acres or more, for $3,500. Both trades were negotiated at the same time. That this and the balance due on the land to be advanced by Billy Lee was to settle it all. The matter was arranged at the bank, which agreed to advance the money.

J. B. Robinson testified that Mike Taylor told him his claim against the land was $1,000.

Mrs. Mollie Masterson testified that Roy said $1,000 would settle the debt of his "dad," and, also, heard Mike say the same thing. She is a sister to Walter's wife.

Mrs. Eva Taylor, wife of Walter, testified that she heard Mike Taylor talk about the debt and understood that his claim was $1,000, and Roy said it was $1,000, and that was the understanding between Roy, Walter and Mike. She knew about the proposed sales mentioned, and the arrangement at the bank to get the money.

■ We need not find that there was in fact only $1,000 owing on the mortgage to support a finding that no more than that as the principal on that account need be paid

by Walter to Roy. It is apparent to us that the transfer of it to Roy was in the nature of a tripartite agreement, whereby the amount of the debt was fixed at $1,000 as of the date of the transfer. The effect is to create a new contract called a novation, by which the old debt, whatever it was, becomes extinguished, and a new one created between different parties. Montgomery Bank & Trust Co. v. Jackson, 190 Ala. 411, 67 So. 235; Comer v. Sheehan, 74 Ala. 452, 46 Corpus Juris 579, 580; 15 Ala.Dig. 431, Novation, ☞4. By the novation there was made a substitution of one creditor for another, and a new amount substituted for the old. 46 Corpus Juris 598, section 39.

We cannot agree with the trial court that the amount of this debt should be computed on the basis of what is recited in the mortgage, but at $1,000 as of the date of the transfer of it to Roy, to-wit, July 10, 1936.

■ There was clearly no error in requiring of complainant the execution of an injunction bond, though the purpose of the injunction was to prevent the impairment of the just exercise of an undoubted right of the court to protect and enforce its jurisdiction over the subject matter of the suit. Grooms v. Brown-Marx, 236 Ala. 655, 184 So. 698.

The decree of the circuit court is reversed to the extent that it computed the amount of the debt owing by Walter Taylor to Roy Taylor on account of the mortgage which Walter had executed to M. J. Taylor, and by him assigned to Roy, and as to the taxation of costs, and remanded with directions to compute the amount of that item of the debt secured by the deed, now held to be a mortgage, at $1,000 as of July 10, 1936.

■ The only controversy between the parties on the merits relates to that item. But for it complainant would probably have effected a redemption without this litigation. He had planned and arranged to do so. That controversy is here decided in favor of appellant, so he should recover costs in the circuit court as well as the costs of appeal in both courts. There is no other serious question here presented.

The judgment of the circuit court is affirmed in part, but reversed to the extent above stated, and remanded for a decree in accord with the views here expressed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.