214 So.2d 313

Frank H. LEE

v.

SOUTHERN PIPE AND SUPPLY CO., Inc.

I Div. 278.

Supreme Court of Alabama.

Sept. 19, 1968.

Hamilton, Denniston, Butler & Riddick, Mobile, for appellant.

38

McCorvey, Turner, Johnstone, Adams & May, Mobile, for appellee.

COLEMAN, Justice.

Defendant appeals from judgment for plaintiff in action on promissory note brought by the payee against defendant as endorser.

Defendant was president of Lee Quality Homes Corporation, herein referred to as Lee. Lee was in the business of building and selling houses. For several years, Lee had purchased building materials from plaintiff. Lee got into financial difficulty and on September 22, 1962, was indebted to plaintiff in the amount of $47,364.25. On the date last mentioned, Lee executed the note sued on and defendant endorsed it. The note is for $47.364.25, and is payable to plaintiff on or before December 10, 1962, with interest at 5½% per annum. Defendant requested plaintiff to take the note. Plaintiff accepted the note as payment for the invoices that were due at the time of the request, and defendant sent the note to plaintiff "in order to secure further credit from" plaintiff. Lee thereafter purchased additional materials from plaintiff and made some payments to plaintiff.

On November 5, 1962, Lee entered into a written agreement with plaintiff, sixteen other suppliers, and C. & S. Bank, who were Lee's creditors, and also two other corporations. The agreement was amended three times, the last amendment being dated May 21, 1963. Plaintiff was not a party to the original agreement but became a party by executing the three amendments. The purpose of the agreement, as recited therein, was to enable Lee to continue to do business and make arrangements for long-term financing. The agreement shows that Lee was indebted to plaintiff for $79,002.75 as of October 27, 1962, which included the note sued on.

Under the first amendment to the agreement, defendant and one other subsidiary or affiliated corporation were to deliver to C. & S. Bank $1,100,000.00 in face amount of mortgage paper to be held and disposed of by the bank and proceeds distributed to the 17 suppliers pro rata, including plaintiff. Defendant obligated himself to supervise liquidation of Lee if liquidation of Lee and its affiliates ensued.

In the second and third amendments, it was specified in detail how the obligations of Lee were to be retired. It appears that some payments had been made to Lee's creditors under the November, 1962, agreement. We understand that plaintiff received such a payment of $8,-412.48 by check dated "12–15–62." The creditors of Lee agreed to continue forbearance under certain conditions. Defendant's evidence tends to show that plaintiff received an additional $305.39 under the agreement by check dated July 31, 1963. Defendant claims that an additional $17,002.96 was paid to, or for the benefit of, plaintiff from liquidation of collateral held by the bank under the agreement. It seems that plaintiff assigned part of the last payment for stock of defendant's affiliated corporation. Defendant claims the stock was worth $10,200.00. The stock certificate was delivered during one of the days on which the case was tried.

Defendant claims further that assets having value of $58,884.98 were paid or delivered to a trustee for benefit of plaintiff. Plaintiff denies that any payment has been made on the note.

Several months after the third amendment to the November, 1962, agreement, Lee, on August 9, 1963, commenced in the United States District Court a Chapter XI proceeding under the bankruptcy laws. Defendant filed two claims against Lee in the Chapter XI proceedings, one claim for the amount of note plus interest and attorney's fees with no credit shown on the note, and another claim for approximately $33,000.00 showing credits reducing the claim to approximately $22,000.00. The District Court combined the two claims and reduced the combined amount to approximately $58,000.00.

To the complaint, defendant filed pleas of the general issue, payment, and a plea that the note and defendant's endorsement thereof were superseded and cancelled by plaintiff's execution of the November, 1962, agreement and amendments thereto.

After a trial without a jury, the court rendered judgment for plaintiff for the full amount of the note plus interest and attorney's fees. Defendant contends that the court erred in rendering judgment for plaintiff for three reasons.

First, defendant says the agreement of November, 1962, and amendments thereto, together with correspondence and dealings pursuant to the agreement, superseded and nullified the note together with defendant's endorsement of the note.

Defendant appears to concede that there is no specific statement in the agreement, or the amendments, to effect that the agreement constituted a substitute for the note or released defendant from his endorsement. Defendant says that "the whole question is one of intention to be established by the facts." Both parties appear to agree that:

> "An essential factor in novation is the discharge from liability, under the original contract, of him who is bound by the original obligation of which novation is asserted. The 'extinguishment of the old contract' must be a result of the new, independent contract. (Citations Omitted) Whether in a given case this essential feature, viz., substitution of a new contract for the old, was present, is a question of intention, to be deduced from the facts and circumstances. (Citations Omitted)" Montgomery Bank & Trust Co. v. Jackson, 190 Ala. 411, 412, 67 So. 235.

■ After careful consideration of the matters in the record and defendant's brief and argument, we are of opinion that the court did not err in not finding that the parties mutually intended that the November, 1962, agreement, as amended, should be an extinguishment of or a substitute for the note. In order to agree with defendant's contention, it would be necessary to find that plaintiff agreed to exchange the obligation of defendant as endorser, and also the obligation of Lee as maker, for the sole, uncertain possibility that Lee might eventually work out its difficulties and, further, that plaintiff so agreed at a time when Lee was insolvent or on the brink of insolvency. We think it unreasonable to infer, from all the circumstances here shown, that a creditor intended to exchange the obligation of such a debtor, and also the obligation of a presumably solvent endorser, for the mere obligation of the debtor under the agreement.

■ Defendant's second contention is that the payments to plaintiff, or for its benefit, made subsequent to execution of the note, plus the assignment of assets made or ordered to be made by Lee under the arrangement confirmed in the bankruptcy proceeding, constituted full payment of Lee's debt to plaintiff, including the note. It is apparent that the payments of approximately $25,000.00 to plaintiff would not extinguish Lee's debt of approximately $79,000.00, including the note. Whatever the assets pledged or transferred under the Chapter XI arrangement may eventually prove to be worth, and whatever bar the bankruptcy proceeding may constitute to plaintiff's bringing an action against Lee, we do not think the transfer of assets under the arrangement constituted payment of the note so as to release the endorser who is not discharged by any decree of the bankruptcy court so far as this record discloses. The defendant's testimony is that, at the time of trial, the only payments that had been made to plaintiff, since execution of the note, consisted of approximately $25,000.00 in cash and the transfer of assets by Lee under the proceedings in the bankruptcy court.[1] We are of

---

1. Defendant testified:
   "Q. We are in agreement, I believe that your company's books showed, in December, 1962 that you owed $70,000 to Southern Pipe and you wrote him and told him so and

opinion that the transfer of Lee's assets under the bankruptcy proceedings does not constitute payment of the note or a release of defendant's obligation as endorser on the note. We do not think that we are required to consider here the possibility that plaintiff may become liable to account to defendant for future dividends which may be paid to plaintiff out of assets transferred pursuant to the Chapter XI arrangement.

Defendant's third contention is that of partial payment. Defendant appears to contend that the payments amounting to approximately $25,000.00, made after execution of the note, should be applied to the oldest items of Lee's debt to plaintiff, and, therefore, should be applied to the note.

In support of this contention, defendant relies on a proposition which he states as follows: "Where no particular application of partial payments is made by either party, such payments will be applied to the oldest items of debt." Defendant cites: Harrison & Robinson v. Johnston, 27 Ala. 445; Larry v. Brown, 153 Ala. 452, 44 So. 841; United States Fidelity & Guaranty Co. v. Simmons, 222 Ala. 669, 133 So. 731.

The rule which defendant apparently seeks to invoke is stated in Harrison & Robinson v. Johnston, supra, as follows:

"If we concede the rule, as contended for by the counsel for the appellants, that when a partial payment is made, by one owing distinct and separate debts, the law, if called upon to make the application, will apply the payment to the debt which is the least secured, or most precarious; still this principle does not apply in the case presented by the record before us. The evidence here shows, that the appellants were the factors and commission merchants of Friend, and that there was a running account between them; and in that case, a different principle applies, and there, in the absence of any application of the payments by the parties, the law applies them to the charges in the order of time in which they accrue, without reference to the fact that one item may be better secured than another.—Clayton's case, 1 Mer. 608; Bodenham v. Purchas, 2 B. & A. 39; Brooke v. Enderby, 2 Brod. & Bing. 70; Story's Eq. § 459 g. It does this, on the principle, that such an appropriation is most consonant to the intention of the parties. Where the factor, from time to time, makes advances, receives payments, and blends the debts and the credits together in one common account, then the parts have no longer any separate existence, but it is the balance only which is considered as due.—Per Bayley, J., in Bodenham v. Purchas, supra." (27 Ala. at 453 and 454)

In the last cited case, the notes sued on were delivered to the creditor, ". . . who passed them to his (debtor's) credit on their books, and held them as bills receivable, and charged them against him in general account when they became due." (Par. Added) (27 Ala. at 452) We do not find in the instant record how the note was handled on the books of plaintiff other than the testimony of plaintiff's president referred to below. The evidence does not compel a finding that plaintiff blended "the debts and the credits together in one common account" so that the parts had "no longer any separate existence" and that "it is the balance only which is considered as due." The president of the plaintiff corporation testified that no payments had been received on the note and that plaintiff had not been directed

---

said is this correct. He wrote you back and said, No, you owe me $79,000, in round figures?

"A. Yes, that's true.

"Q. And then since that time, a total of $25,000 in cash, you say, has been paid to him, $17,000 and 84 hundred in round figures has been paid to Southern Pipe, in cash?

"A. Yes sir.

"Q. And the only other payment that has been made on it has come through this deeding of assets following the Chapter 11 proceeding?

"A. Yes sir."

to apply on the note any payment that had been received. When plaintiff filed claims in the Chapter XI arrangement, plaintiff filed two separate claims, one on the note showing no credits and another claim on the unsecured account showing some credits. Defendant testified that the practice of Lee had always been to pay the oldest invoices first; and the same practice was followed as to notes.

If there be any conflict in the testimony as to application of payments, the trial court, who saw and heard the witnesses, had the duty to resolve that conflict. "The burden of proof was upon the defendant." United States Fidelity & Guaranty Co. v. Simmons, supra.

The rule here applicable is as follows. A debtor, owing to the same creditor more debts than one, and making partial payments, has the right to elect and dictate to which debt the payment shall be credited; but, if neither the debtor nor creditor expresses an election, the presumption of law is that the credit is applied most beneficially to the creditor, that is, to the most precarious debt or the one least secured. McCurdy v. Middleton, 82 Ala. 131, 2 So. 721; Bell v. Bell, 174 Ala. 446, 56 So. 926, 37 L.R.A.,N.S., 1203.

In the instant case, the evidence supports a finding that the partial payments made by Lee were or should be, by operation of law, applied to the unsecured debt of Lee and not to the note. We hold that error in rendering judgment for plaintiff has not been shown.

Defendant asserts error in sustaining objections to a number of documents which defendant offered in evidence. We do not find these documents in the record. We are not persuaded that the rulings complained of, even if erroneous, prejudiced defendant's case. In any event, the propriety of the court's rulings in refusing to allow the introduction of these documents is not reviewable when the documents are not set out in the record. Forest Invest-

ment Corp. v. Commercial Credit Corp., 271 Ala. 8, 11, 122 So.2d 131, and authorities there cited.

Defendant argues briefly and collectively, in three groups, twenty-four assignments complaining of rulings on objections to oral testimony. On consideration of these assignments, we are of opinion that error prejudicial to defendant has not been shown.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and KOHN, JJ., concur.